In the Matter of PREMIUM ICE COMPANY, INC., Petitioner, against MILO R. MALTBIE et al, Individually and as Members of the Public Service Commission of the State of New York et al., Respondents.

Third Department, June 30, 1943.

*Saul Godwin* (*Paul S. Lipson* of counsel), for petitioner.

*Gay H. Brown,* Counsel to Public Service Commission (*George H. Kenny* of counsel), for Public Service Commission, respondent.

*Whitman, Ransom, Coulson & Goetz* (*Jacob H. Goetz* and *Robert H. Miller* of counsel), for Consolidated Edison Company of New York, Inc., and others, respondents.

HILL, P. J. Petitioner, a manufacturer of ice in the borough of Manhattan, and a customer of respondent, Consolidated Edison Company of New York, Inc., asked in this proceeding, brought under article 78 of the Civil Practice Act, that this court annul as arbitrary and discriminatory a decision and determination of respondent, the Public Service Commission, which canceled the rule and regulation filed by the Edison Company as a part of its rate schedule and substituted another rule and regulation. The controversy involves the rate which the Edison Company may charge for electrical energy in other

than residential premises which is reserve or auxiliary to equipment performing the same function and which is so installed that it may be supplied with energy from another source whether electrically or mechanically produced. A "firm service rate" would be charged petitioner if all its compressors were operated by energy obtained from respondent, and under certain other conditions, not of importance on this review. The rate fixed by the rule has to do with the amount which may be charged for "segregated service" used by the consumer for "breakdown, reserve and auxiliary purposes." The testimony shows that the petitioner's plant is equipped with four ammonia compressors, three driven by energy obtained from the Edison Company and the fourth by a Diesel engine owned and operated by petitioner. All auxiliary equipment such as condensers, pumps, water pumps, cranes, etc., is electrically operated from the Edison Company's service. The compressors feed into a common ammonia system. The relative work done by the Diesel and the electrically driven compressors varies in accordance with the amount of ice sold. In the winter time the Diesel driven compressor alone is operated except when it is necessary to use those electrically driven at periods when more than the usual amount of ice is required. Under this plan the electric company is required to have energy available at all times to take over the operation of the plant at full capacity, while for months it may be that no demand will be made for electrical energy, as all necessary power will be derived from the customer-operated Diesel engine.

The Commission has determined the rate to which the utility is entitled for this stand-by service. Many factors enter into the determination. This court is not equipped to evaluate the cost of the items except as indicated by the proof offered by the Commission. No evidence was offered by petitioner.

Petitioner invited the Commission to broaden the scope of the hearing to include the reasonableness generally of the rates, charges, rules and regulations permitted the respondent Edison Company, and in connection therewith offered in evidence a report made by two employees of the Commission. It was excluded, the Commission ruling "that Mr. Regan and Mr. Nexsen may be called by any party to the proceeding to testify as to facts personally known to each of them, but that they may not be called to give opinion testimony as to any matter to be determined by the Commission" and limited the scope of the hearing to the reasonableness of the rule and regulation first herein described. Some of the questions addressed by counsel

to the hearing commissioner would be unusual if addressed to a judge in a law court. These carried an innuendo, if not a direct suggestion, that the Commission had considered as evidence a report or reports not in the record in formulating the rule.

The Legislature created the Public Service Commission, now one of the most ancient bodies having what is generally called bureaucratic powers, with two functions *inter alia* — one quasijudicial, wherein the members pass upon prices to be charged for utility service and the reasonableness of rules and regulations governing the sale and distribution of items classified as public utilities — in the other capacity it controls and directs a large number of persons working as engineers, inspectors and the like who, with or without a complaint to the Commission, investigate to ascertain what is fair between vendor and vendee in a field particularly subject to monopolistic tendencies. The courts have determined long since that such a union of inquisitorial and judicial powers does not offend against the Constitution. Whether the combination is a happy one is open to question, but the objections, if any there be, to the general plan should not be addressed to the courts but to the Legislature. The Commission in this matter is acting under the Public Service Law. (§ 66, subd. 14.) The proceeding could have been started by the Commission " upon complaint or upon its own motion." If begun upon its own motion in a field so vast as the rules, regulations and rates of the utilities of the State, a preliminary investigation would be required and proper. In an entirely different field, but with somewhat the same thought, a grand jury investigates prior to a trial, and the returning of an indictment raises no presumption of guilt. There was no error in excluding the report of the two investigators, indeed it would be difficult to understand under what theory the hearsay statements and conclusions would be competent, and the ruling of the Commission earlier quoted gave to all the parties the privilege of calling those who made the report to ascertain facts. The conclusions to be drawn therefrom could have been developed by experts privately employed by the litigating parties. The Commission is not bound by technical rules of evidence (Public Service Law, § 20), but the ruling did not offend against such rules and further, it seems sensible and wise that the body which is to draw the decisive conclusions not resort to expert evidence from its own staff. The petitioner herein is not aggrieved by the ruling. An inquiry as to the rates generally of this great utility would involve

months of time and a staggering amount of money for expenses. Unless good cause therefor was shown, certainly the Commission was not required to grant the request of a customer who disapproves of the classification in which he finds himself.

The decision should be confirmed, with fifty dollars costs and disbursements.

All concur.

Decision confirmed, with fifty dollars costs and disbursements.