Matthew J. Jasen, J.
These are cross applications, one for review and annulment and one for enforcement of an order of the State Commission for Human Bights.
The petition of Marrano Construction Co., Inc., hereinafter referred to as the “ Corporation ” and Pasquale A. Marrano hereinafter referred to as “ Marrano ”, in support of their application to annul the order of the State Commission for Human Bights, hereinafter referred to as the “ Commission ”, alleges in substance, (1) that evidence was insufficient to sustain the charge and to support the findings made; (2) that the complaint against Marrano did not comply with section 297 of the Executive Law in that it was more than 90 days after the date of the alleged discriminatory practice; (3) that the procedures under article 15 of the Executive Law, violate due process; (4) that they were not afforded due process in the hearing before the Commission; and, (5) that the Commission’s order is not sufficiently definite to be enforcible.
The cross petition of the Commission seeks to enforce its order against said Corporation and Marrano.
The proceeding before the Commission was initiated upon a complaint made by Charles Broadus, a Negro, who charged that on April 12,1964, the Corporation had refused to sell a housing accomodation to be constructed for complainant, because of his color.
Mr. Broadus’ complaint was processed in accordance with the provision of section 297 of the Executive Law and on May 14, 1964, Commissioner Lloyd L. Hurst was designated Investigating Commissioner. On October 3, 1964, the complaint was amended by adding Marrano as a respondent and, three days later, Commissioner Hurst found probable cause as to the allegations contained in the complaint, as amended. Subsequently, the Commissioner made efforts to eliminate the alleged discriminatory practices complained of, but these efforts failed and a hearing was directed.
Pursuant to notice a hearing was held in Buffalo on November 18, 1964, before Presiding Hearing Commissioner J. Edward Conway and Hearing Commissioners, Francis X. Q-iaccone and Buperto Buiz, sitting as the Commission. All parties appeared by counsel and full opportunity to present evidence and cross-examine witnesses was extended.
After due consideration, the Commission rendered a decision on December 28,1964, which, in substance, directed the Corpora *1084 tion and Marrano to cease and desist discriminatory practices and further to “ offer to sell forthwith to complainant a house similar to the four bedroom split-level model house in the French Lea Estates Subdivision in Cheektowaga, New York”.
Let us first consider whether the evidence sufficiently sustains the charges and the findings made.
The complainant was the only person who testified. On April 12, 1964, the complainant went to French Lea Estates Subdivision in Cheektowaga, New York, a development at which the Corporation was constructing houses. There he discussed with a salesman the purchase of a house similar to the four bedroom split-level model on display at premises. The salesman prepared a breakdown of the carrying charges based on a $6,500 down payment which complainant advised he intended to make. At that time, the complainant inquired of the salesman if the heating system could be changed from hot water to forced air and was advised that this would have to be discussed with the builder and he would have the information the following week.
On April 19, 1964, the complainant returned and was advised by the same salesman that he had ‘ ‘ talked with the builder and he said he couldn’t change the heating system over for you. I said well, I’ll take it as it is. He said, well there’s no need to beating around the bush, I might as well come out and tell you that the builder said he wouldn’t build you a house because he doesn’t think you’re sincere. Well, I said, what do I have to do to prove it, I have the money and I’m ready to do business, what do you suggest? He said, I don’t know.”
'The complainant further testified that on August 19, 1964, he returned to the French Lea Estates and stated to another salesman that he was interested in having a house built like the model and asked if there were any lots still available. The salesman said there were lots available but that he would have to talk to the builder and find out what lots were available and whether the model was still being built. On August 24, 1964, the salesman advised complainant that “ the builder didn’t wish to sell (him) a house because of previous dealings ”,
Complainant also testified that he was and still is able and willing to purchase a dwelling on the same terms offered by the Corporation to the public.
Based on this factual situation and in the absence of any reasonable explanation for the rejection of complainant’s offer and ability to purchase a house, this court is of the opinion that the Commission properly inferred that complainant was rejected because of his color and therefore the evidence sustains the charge and findings made.
*1085 The findings of the Commission as to the facts, ‘ ‘ shall be conclusive if supported by sufficient evidence on the record considered as a whole ”. (Executive Law, § 298.)
The defense set forth by the Corporation and Marrano in their answer, that rejection of Mr. Broadus was on the basis of lack of sincerity, is not convincing.
Seldom does a party intent on practicing discrimination declare or announce his purpose. It is more likely that methods subtle and elusive are used to accomplish the desired discrimination.
With respect to the second point raised by Marrano that the complaint against him did not comply with section 297 of the Executive Law in that it was made more than 90 days after the alleged discriminatory practice, this court disagrees.
It is undisputed that the rejection of Mr. Broadus by the Corporation on April 19, 1964 was admittedly with the knowledge and at the discretion of Marrano, who was at all times herein the president of the Corporation.
There is evidence in the record to indicate that the rejection of Mr. Broadus on August 24, 1964 was a continuance of the policy of the builder Corporation to refuse to construct a house for the complainant. This policy as shown by the record was originally instituted by Marrano, as president of the Corporation. It can be reasonably inferred from the testimony accepted by the Commission that the rejection of the complainant on August 24, 1964 was the direct result of the policy admittedly affected by him on April 19, 1964.
Accordingly, this court finds that the Commission properly concluded that Marrano is also individually liable for the continuing rejection of Mr. Broadus by the Corporation.
To hold contrary, under the facts and circumstances in this case, would free the corporate officer from liability for corporate policy, admittedly initiated by him in violation of the law and which resulted in discriminatory practices by the Corporation.
The Corporation and Marrano also complain that the procedures under article 15 of the Executive Law violate due process.
According to the procedure prescribed by said article, at the time a complaint is filed, one of the Commissioners is designated an Investigating -Commissioner and is charged with the prompt investigation of the complaint. In the event the Investigating Commissioner makes a determination of probable cause, he then requires the respondent to answer such charges at a public hearing before three other members of the Commission, desig *1086 nated at Hearing Commisisoners, who have the duty to decide the issues raised by the Investigating Commissioner. While it is true that the Investigating Commissioner cannot be a Hearing Commissioner in the case he acted as Investigating Commissioner, he will undoubtedly, at a future time, be a judge, of the investigative activities of those who judge his actions in this instance.
We thus have a situation where the Commission is the sole agency charged with the investigation, prosecution and the adjudication of a complaint filed against a party. We also have a situation where today’s investigator is tomorrow’s judge and vice versa.
Hence, the Corporation and Marrano argue, it seems beyond the realm of human restraint that any Commissioner could, under such circumstances, fail to be influenced by a fellow Commissioner’s determination of probable cause. This procedure, they maintain, cannot engender public confidence in any determination by quasi-judicial bodies, where the rights and freedom of our citizens are involved, nor can it, in truth, grant to a respondent the due process to which a party is entitled.
In support of their claim they cite the case of Wong Yang Sung v. McGrath (339 U. S. 33) where a deportation hearing had been conducted by an immigration inspector whose duties were principally investigative. The court there held that the Federal Administrative Procedure Act applied to deportation hearings and that immigration inspectors were not specifically designated by statute to conduct such hearings.
The Federal Administrative Procedure Act (U. S. Code, tit. 5, § 1001 et seq.) bars as hearing officers, persons involved in the investigating or prosecuting aspects of an administrative agency’s matter, but excludes from that restriction, “ members of the body comprising the agency ” (§ 1004, .subd. [c]).
It follows that a combination of inquisitorial and judicial functions within an agency does not violate due process provided that the same person is not involved in both the investigative and the judicial phase of a matter before the Commission. (Matter of Premium Ice Co. v. Maltbie, 266 App. Div. 455; Pangborn v. Civil Aeronautics Bd., 311 F. 2d 349.)
The procedure followed in Wong Yang Sung (supra) can be distinguished from that authorized by article 15 of the Executive Law, in that, subdivision 2 of section 297 of said article, provides for a separation of the investigative and quasi-judical function of the members of the Commission in a specific matter, and which, from the proof presented, was strictly observed in the proceedings antecedent to and upon the hearing in this matter.
*1087 Thus, the procedures as provided for in article 15 do not violate due process.
The Corporation and Marrano also attack the proceeding on the ground that they were denied due process under the law because the Commission, (1) failed to furnish a bill of particulars as demanded; (2) denied a motion for an adjournment; (3) failed to hold a conciliation conference with Marrano; and (4) disclosed unlawfully to an outside agency what had transpired in the course of a conciliation conference with the Corporation.
As to the first point raised, there is no provision either in the law against discrimination or in the rules governing practice and procedure before the Commission which requires the furnishing of a bill of particulars.
Although CPLR 3041 provides for the right to a bill of particulars in all cases, CPLR 101 states that “ The civil practice law and rules shall govern the procedure in civil judicial proceedings in all courts of the state and before all judges, except where the procedure is regulated by inconsistent statute ’ ’.
Civil judicial proceedings, is defined by CPLR 105 (subd. [d]) as “ a prosecution, other than a criminal action, of an independent application to a court for relief (Emphasis supplied.) It follows that the proceding before the Commission is not a civil judicial proceeding, and therefore CPLR 3041 is not applicable.
The Commission, however, is required to comply with subdivision 1 of section 297 of the Executive Law which provides that the complaint “ shall set forth the particulars thereof and contain such other information as may be required by the commission ’ ’.
An examination of the complaint reveals that the Commission adequately apprised the Corporation and Marrano of the nature of the charges and of the transactions which gave rise to the charges.
Furthermore, the record discloses that in response to the demand for particulars, the Commission did furnish the Corporation and Marrano with additional information.
Furthermore, in reading the record, the court cannot find that the Corporation and Marrano were in any way prejudiced by this failure to furnish all of the information demanded by their bill of particulars. It is clear that they were aware of the charge against them and certainly at the end of the Commission’s case, if they were surprised and desired additional time to prepare their defense, they could have requested an adjournment, and this they failed to do.
*1088 A request for an adjournment at the opening of the trial was made by the Corporation and Marrano which was denied. This request, however, was made on the basis that the Commission failed to furnish a bill of particulars and upon no other ground.
In view of the court’s holding as to the bill of particulars, the motion for an adjournment was properly denied by the Commission.
Marrano’s further objection that he was denied due process since the Investigating Commissioner did not hold a conciliation conference with him individually, is without legal basis.
In reading rule 3 (b) of the Buies Governing Practice and Procedure before the State Commission for Human Bights (9 NYOBB 465.4): “ b. Conference, conciliation and persuasion. If the investigation commissioner finds that probable cause exists for crediting the allegations of the complaint, he shall immediately endeavor to eliminate the unlawful discriminatory practice complained of by conference, conciliation and persuasion ” it would appear that the use of. the word “ shall ”, mandates such procedure.
However, subdivision 2 of section 297 of the Executive Law provides in part: “In case of failure to eliminate an unlawful discriminatory practice complained of, or in advance thereof if in the judgment of the commissioner making the investigation circumstances so warrant, he shall cause to be issued and served in the name of the commission, a written notice, together with a copy of such complaint, as the same may have been amended requiring * * * respondent, to answer the charges of such complaint at a hearing before three members of the commission ”.
It would seem that where circumstances so warrant, subdivision 2 of section 297 authorizes an Investigating Commissioner to set a matter down for a hearing before the Commission without first making efforts at conciliation.
In this case, where the charges against the Corporation and Marrano were substantially, if not identically the same, and a prior conciliation conference was held with this Corporation, a second such conference would not be required.
The fourth argument as to due process has to do with the claim that a staff member of the Commission disclosed what had transpired at the conciliation conference between the Commission and the Corporation on May 20, 1964 in violation of rule 3c of the Commission’s Bules and subdivision 2- of section 297 of the Executive Law.
This alleged violation has no bearing upon the merits of the proceeding under review. If a violation did in fact occur, the *1089 Corporation may very well have an action at law for damages resulting from such unlawful disclosure, but it docs not effect due process nor go to merits herein.
Finally, the Corporation and Marrano contend that “ in view of the penal nature of the law against discrimination ’ ’, the requirement of the Commission’s order that they offer to build a house similar to the four-bedroom model house seen by Mr. Broadus, is not legally definite enough to permit a determination of compliance therewith.
The court is unable to agree with that contention. Although section 299 of the Executive Law does provide for penal sanctions, it is similar to sections contained in the National and State Labor Relations Acts (U. S. Code, tit. 29, § 162 and Labor Law, § 709) which are not viewed as penal statutes.
The order in this case is remedial in nature, containing no punitive provisions. It seeks to remedy the discrimination found to have been perpetuated against the complainant and to prevent similar discrimination as to others attempting to purchase housing accommodations from the Corporation.
As to the contention that it would be impossible to determine whether there was compliance with the order to build a house “ similar ” to the model on display, the court is of the opinion that such provisions of the order can reasonably be complied.
The word “similar” means, “of a like nature or kind” according to the Oxford Dictionary, or ‘ ‘ nearly corresponding; resembling in many respects; somewhat like; having a general likeness ” as defined in Webster’s New International Dictionary.
The Commission’s order is not to be interpreted to mean an exact duplicate of the model house, but merely that it be constructed essentially the same.
The application of Marrano Construction Co., Inc., and Pasquale Marrano to annul the determination of the Commission is denied, and the cross motion of the Commission to enforce its order, is granted.