509 So.2d 940 (1985)
RANGER INSURANCE COMPANY, a Foreign Corporation, Appellant,
v.
BAL HARBOUR CLUB, INC., Appellee.
No. 84-918.
District Court of Appeal of Florida, Third District.
May 21, 1985.
Joe N. Unger, Corlett, Killian, Hardeman, McIntosh & Levi, Miami, for appellant.
Mershon, Sawyer, Johnston, Dunwody & Cole and James M. McCann, Jr., Miami, for appellee.
Before HENDRY, NESBITT and FERGUSON, JJ.
*941 NESBITT, Judge.
Ranger Insurance Company (Ranger) appeals a final summary judgment entered in a declaratory action determining that the policy of insurance issued to the Bal Harbour Club, Inc. (the Club) afforded coverage for the incidents described. We affirm.
Ranger provided insurance coverage for certain liabilities incurred by the Club. The Club called upon Ranger for full coverage and defense of a suit brought against the Club by Phil and Rona Skolnik. The Skolniks alleged in their complaint that the Club and its members conspired to deprive the Skolniks of their right to own, occupy and use certain real property in the residential section of Bal Harbour.
Restrictions in the deed to the property the Skolniks were buying required that the property not "be used or occupied by anyone not a member of the Caucasian race, nor anyone having more than one-fourth Hebrew or Syrian blood," and further required that the property not be transferred to anyone who is not "a member of Bal Harbour Club, Inc." Although the racial deed restrictions lapsed in 1968, the Skolniks alleged that the requirement that a purchaser be a member of the Club was a sham to exclude Jews from the use and occupancy of the property. The Skolniks alleged that the Club's failure to approve their application for membership was the result of a "willful, wanton, reckless, [and] total disregard" of their rights and prevented them from obtaining good and marketable title to the subject real property.
In the first count of the complaint, the Skolniks sought $10 million in damages for tortious interference with their contract to buy the property from the seller. In the second count, the Skolniks sought declaratory relief in the form of a declaratory judgment holding that the enforcement of the deed restrictions by the Club constituted housing discrimination in violation of Chapter 11A, Article I, of the Metropolitan Dade County Code and several constitutional provisions.
Although Ranger questioned its obligation to provide coverage, it proceeded to defend the Club in the action under a reservation of rights. See Stevens v. Horne, 325 So.2d 459, 462-63 (Fla. 4th DCA 1975); Midland National Insurance Co. v. Watson, 188 So.2d 403 (Fla. 3d DCA 1966). The lawsuit was ultimately settled with the advice and consent of Ranger by the Club paying $25,000 to the Skolniks.[1],[2] Ranger then instituted this declaratory action seeking a determination that there was no coverage under the policy issued to the Club. The Club counterclaimed for a determination of coverage and attorney's fees. The trial court ultimately entered a final summary judgment for the Club, ordered Ranger to pay the Club $25,000 and reserved jurisdiction to tax costs and attorney's fees. The trial court found coverage to exist under two separate provisions in the insurance contract. We need only find coverage under one of these provisions to affirm.[3]
As the final summary judgment reflects, the parties stipulated that the case was "ripe for summary judgment" and that the trial court "could decide the coverage issue based solely upon the allegations of the complaint." See Steil v. Florida Physicians' Insurance Reciprocal, 448 So.2d 589, 592 (Fla. 2d DCA 1984) ("as a condition precedent to any recovery against the [insurance] carrier, [the plaintiff] will have to prove that [the] claim against [the insured] was within the coverage of the policy"). The Skolniks alleged in their complaint that the Club and its members conspired to intentionally deprive the Skolniks of their right to own, occupy and use certain *942 residential property in Bal Harbour. The parties to this action do not dispute that the Skolniks' claims fell within the policy definition of "personal injury" which includes "injury arising out of ... wrongful entry or eviction or other invasion of the right of private occupancy."[4] Thus, the question before us is whether the general provision providing coverage for personal injury liability applies here and, if so, whether any of the enumerated exclusions prevent coverage.
The general personal injury liability coverage provision, contained in an endorsement to the policy, provides in pertinent part:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury ... to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business... .
Despite the plain language of this provision, Ranger argues that this court should read into the provision a requirement that any claim must be based on an "occurrence." "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Ranger then argues that since the allegations against the Club indicate intentional and conscious actions on the part of the Club, the complained of actions do not meet the definition of occurrence and, therefore, the policy does not provide coverage. We reject this argument.
Although we agree that the underlying allegations of the Club's actions would take those actions outside the definition of "occurrence,"[5] nowhere in the personal injury liability coverage provision is there a requirement that any claim be based upon an occurrence. The clear and unambiguous language provides that "[t]he company will pay ... all sums which the insured shall become legally obligated to pay as damages because of personal injury ... to which this insurance applies ... arising out of the conduct of the named insured's business...." It is clear that the injuries complained of fall within the policy definition of "personal injury."[6]
The only place the policy limits coverage to occurrences is in the endorsement providing coverage for bodily injury and property damage liability.[7] The relevant provision provides in pertinent part:

*943 The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence. ... [emphasis added]
Coverage for claims for bodily injury or property damage, therefore, would clearly be limited to claims based upon injuries or damages caused by an occurrence. See Hartford Fire Insurance Co. v. Spreen, 343 So.2d 649, 650-52 (Fla. 3d DCA 1977). This limiting language, however, does not appear in the personal injury liability coverage provision. Therefore, the fact that the Club's claim is not based on an occurrence cannot be relied upon to defeat coverage under the personal injury liability provision. Hartford Fire, 343 So.2d at 652.
In a fall-back argument, Ranger contends that the policy does not provide coverage because the Club's alleged actions fall within an exclusion provision of the policy. The relevant provision provides:
This insurance does not apply ... to personal injury ... arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured.
Ranger argues that the Club's alleged actions violate Chapter 11A, Article I, Metropolitan Dade County Code, that said provisions of the code are penal in nature, and that, therefore, the insurance coverage does not apply. The Club counters by arguing that the relevant code provisions do not amount to a penal ordinance. We agree with the Club.
The Florida supreme court, long ago, generally defined "penal laws" as those laws imposing a pecuniary or personal punishment for an offense against the state which are subject to the pardon power.
In determining whether a statute is penal in the strict and primary sense, a test is whether the injury sought to be redressed affects the public. If the redress is remedial to an individual and the public is indirectly affected thereby, the statute is not regarded as solely and strictly penal in its nature.
Atlantic Coast Line R. Co. v. State, 73 Fla. 609, 74 So. 595, 600 (1917) (quoting State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 So. 969, 980 (1908)). The fact that a statute or ordinance contains a penal provision does not make the entire statute or ordinance penal in nature. Board of Public Instruction of Broward County v. Doran, 224 So.2d 693, 699 (Fla. 1969). The test most often articulated for determining whether a particular provision of legislation is penal in character is whether the legislative aim in providing the sanction was to punish the individual for engaging in the activity involved or to regulate the activity in question. United States v. Futura, Inc., 339 F. Supp. 162, 165 (N.D.Fla. 1972) and cases cited. A statute or ordinance enacted for the public benefit should be construed as remedial and not penal, even though it may contain some penal provisions. See City of Miami Beach v. Berns, 245 So.2d 38 (Fla. 1971); Doran; Wolfson v. State, 344 So.2d 611 (Fla. 2d DCA 1977).
Although the article on discrimination in housing of the Metropolitan Dade County Code does contain some provisions penal in character, we find that the overall article was enacted for the public benefit and contains provisions remedial to individuals which only indirectly affect the public and, thus, the article is remedial in nature. The express policy behind the enactment was
to assure equal opportunity to all persons to live in decent housing facilities regardless of race, color, religion, ancestry, national origin, age, sex, physical handicap, marital status, or place of birth, and, to that end, to prohibit discrimination in housing... .
Metropolitan Dade County, Fla., Code ch. 11A, art. I, § 11A-1 (1981). In addition to giving the Dade County Fair Housing and Employment Appeals Board (the Board) the power to apply to an appropriate court for the assessment of a fine (not to exceed $500) and/or imprisonment (for not more *944 than 60 days) in certain circumstances, the Code also gives the Board the power to award damages to a prevailing complainant for injuries incurred as a result of a prohibited act of discrimination, to award attorney's fees and costs to a prevailing complainant, to develop and implement affirmative action programs, and to apply to an appropriate court for injunctive relief to preserve the status quo or to prevent irreparable harm and to carry out the purposes of the article. Metropolitan Dade County, Fla., Code ch. 11A, art. I, § 11A-7(5)(f)(i)(v) (1981). See also Metropolitan Dade County, Fla., Code ch. 11A, art. I, §§ 11A-8(c)(6) and 11A-13.1 (1981). It is the expressed policy of the fair housing and employment director (the director) and the Board to encourage conciliation of charges:
After a finding and any time until final hearing by the board, the director will work with the parties in an attempt to conciliate the charge.
Metropolitan Dade County, Fla., Code ch. 11A, art. I, § 11A-8(g) (1981).
We find that the aim of the drafters of this article in making some provisions for penal sanctions was not to punish a violator, but rather was to enable the Board to more efficiently regulate discrimination in housing. See Futura. Accordingly, we hold that chapter 11A, article I, of the Metropolitan Dade County Code is not penal in nature for purposes of determining insurance coverage in the present case. See Laufman v. Oakley Bldg. & Loan Co., 408 F. Supp. 489 (S.D.Ohio 1976) (holding that the provisions of the Federal Fair Housing Act, 42 U.S.C.A. §§ 3601-3631 (1977), [which are similar to the provisions in the Dade County Code,] are not penal in nature or effect); Marrano Construction Co. v. New York State Commission for Human Rights, 45 Misc.2d 1081, 259 N.Y.S.2d 4 (Sup.Ct. 1965) (finding that New York's anti-discrimination in housing law is not penal in nature, despite provisions for penal sanctions therein). Cf. Insurance Co. of North America v. Chinoise Restaurant & Trading Corp., 85 A.D.2d 712, 445 N.Y.S.2d 835 (1981) (holding that an insurance company had a duty to defend an action against the insured despite allegations that the insured violated New York's Human Rights Law (restaurant's discrimination toward handicapped); indicating such laws are not penal for purposes of exclusion clause in insurance contract, despite provisions for penal sanctions in the law).
Since the Club's claim in this case falls within the personal injury liability coverage of the insurance policy and no exclusions apply, the summary judgment entered in favor of the Bal Harbour Club is affirmed.
HENDRY, J., concurs.
FERGUSON, Judge (dissenting).
I would agree that the first argument urged as grounds for reversal  that the club's discriminatory acts did not constitute "occurrences" and so were not covered by the insurance policy  does not justify reversal. The pertinent policy provisions are not models of clarity, therefore, any ambiguity in the insurance contract must be resolved in favor of the insured. Harris v. Carolina Life Insurance Co., 233 So.2d 833 (Fla. 1970); Williams v. General Insurance Co., 468 So.2d 1033 (Fla. 3d DCA 1985).
I disagree with the majority's disposition on the second point  whether the insured's longstanding policy of invidious discrimination is in violation of a penal law so as to be excluded from coverage. These acts are prohibited by chapter 11A, article I, Code of Metropolitan Dade County. The chapter expressly makes acts involving discrimination in housing "unlawful," allows for a fine or imprisonment for violations, and as such constitutes a penal law. The majority admits that several of these provisions are penal in character. The only cases cited by the majority that have passed on the narrow issue of whether similar anti-discrimination laws are penal in nature are not well-reasoned and, fortunately, are not binding on this court. Other cases cited by the majority actually lend support to my position. See, e.g., United States v. Futura, Inc., 339 F. Supp. 162, 165 (N.D.Fla. 1972) (since punishment in the form of a fine is imposed for violation of statute, as *945 distinguished from civil remedy, statute regulating rental rates may be considered penal in nature); Atlantic Coast Line R. Co. v. State, 73 Fla. 609, 74 So. 595 (1917) (penal laws, strictly and properly, are those imposing a pecuniary or personal punishment for an offense against the state).
Moreover, the propriety of saddling the insurer with responsibility for illegalities of this ilk runs against the public policy which makes the acts unlawful in the first instance. It is well established that any contract of insurance which is contrary to a settled rule of public policy is invalid and unenforceable. 43 Am.Jur.2d Insurance § 260 (1982); 30 Fla.Jur.2d Insurance § 389 (1981). See generally Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969) (express contractual provisions of motor vehicle liability policies may be restricted or limited where they collide with those considerations which affect the interests of the public generally). Florida courts have consistently refused to give effect to insurance coverage provisions which contravene public policy. See, e.g., Shingleton (nonjoinder provisions in motor vehicle liability policies are contrary to public policy and are unenforceable); Reeves v. Miller, 418 So.2d 1050 (Fla. 5th DCA 1982) (motor vehicle liability policy which did not provide for exclusion for obligations cognizable under Federal Tort Claims Act is contrary to legislative public policy and is inoperative and invalid); Hussar v. Girard Life Insurance Co. of America, 252 So.2d 374 (Fla. 2d DCA 1971) (public policy against allowing one to benefit from his own wrong precludes coverage for intentionally self-inflicted injuries). I would likewise not interpret a policy of insurance as providing coverage for acts of intentional religious discrimination, acts which are specifically prohibited by the constitution and penal laws, for the reason that to do so clearly contravenes the public policy of this state.
NOTES
[1] The Skolniks eventually became members of the Club and acquired the property in question.
[2] Since the settlement was entered with the advice and consent of Ranger, there can be no genuine dispute as to the Club's good faith or the reasonableness of the settlement. See Steil v. Florida Physicians' Ins. Reciprocal, 448 So.2d 589, 592 (Fla. 2d DCA 1984).
[3] Since we find that coverage exists under the personal injury liability provision in the policy, we need not decide whether the trial court was also correct in finding coverage under the "incidental" contractual liability provision.
[4] "Personal injury" is not used in the policy in its classic sense which would be more akin to the policy's definition of "bodily injury." Instead, the policy defines "personal injury" as follows:

"Personal Injury" means injury arising out of one or more of the following offenses committed during the policy period:
1. false arrest, detention, imprisonment, or malicious prosecution;
2. wrongful entry or eviction or other invasion of the right of private occupancy;
3. a publication or utterance
(a) of a libel or slander or other defamatory or disparaging material, or
(b) in violation of an individual's right of privacy;
except publications or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the named insured shall not be deemed personal injury.
The law is well settled that a contract of insurance, prepared and phrased by the insurer, is to be construed liberally in favor of the insured and strictly against the insurer. Hartford Fire Ins. Co. v. Spreen, 343 So.2d 649, 652 (Fla. 3d DCA 1977); Moore v. Connecticut Gen. Life Ins. Co., 277 So.2d 839, 842 (Fla. 3d DCA 1973), cert. denied, 291 So.2d 204 (Fla. 1974). Therefore, even if the parties disputed the point, we would find the coverage of the policy for "personal injury," defined, inter alia, as an injury arising out of an "invasion of the right of private occupancy," is broad enough to cover damages caused by the alleged intentional acts of the Club herein. See Hartford Fire, 343 So.2d at 652.
[5] This determination does not take into account the semantic problems involved in trying to relate "personal injury" with "occurence" as those terms are defined in the policy. See infra note 7.
[6] See supra note 4 and accompanying text.
[7] Literally applying the definitions in the policy, "occurrence" could only relate to liability for bodily injury or property damage because it is defined by those terms: "`occurrence' means an accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." [emphasis added]