[No. B033011. Second Dist., Div. Seven. Jan. 31, 1989.]

DOMENICO FRAGOMENO et al., Plaintiffs and Appellants, v. INSURANCE COMPANY OF THE WEST et al., Defendants and Respondents.

**COUNSEL**

Bleiweis, Belshaw, Melka & Wall and Jay S. Belshaw for Plaintiffs and Appellants.

Chapman & Gluksman, Arthur J. Chapman and Catherine M. Adams for Defendant and Respondent.

Farella, Braun & Martel and Jerome I. Braun as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**WOODS (Fred), J.**—Appellants Domenico and Adriana Fragomeno (the Fragomenos) appeal from the summary judgment in favor of respondent Insurance Company of the West (ICW) in an action involving causes of action for declaratory relief, breach of contract and breach of the covenant of good faith and fair dealing. The trial court concluded that the personal injury endorsement of the Fragomenos' insurance policy did not provide coverage for the unlawful detainer action brought against the Fragomenos by their lessor and entered summary judgment for respondent ICW.

## Scope of Review of Grant of Motion For Summary Judgment

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) ■ The purpose of summary judgment is to penetrate evasive language and adept pleading and to ascertain, by means of affidavits, the presence or absence of triable issues of fact. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) Accordingly, the function of the trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist and not to decide the merits of the issues themselves. (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441 [116 P.2d 62].)

■ Summary judgment is a drastic measure that deprives the losing party of a trial on the merits. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134].) It should therefore be used with caution, so that it does not become a substitute for trial. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 111 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) The affidavits of the moving party should be strictly construed, and those of the opponent liberally construed. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) Any doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 437 [74 Cal.Rptr. 895, 450 P.2d 271].)

■ A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. (*Stationers Corp.* v. *Dun & Bradstreet, supra,* 62 Cal.2d 412, 417.) To succeed, the defendant must conclusively negate a necessary element of the plaintiff's case and demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial. (*Ibid.*) We shall examine the grant of summary judgment in this case with the foregoing standard in mind.

## Issue on Appeal

In this appeal, we consider whether a lessee's alleged unlawful possession of the leased premises constitutes an "invasion of the right of private occupancy" within the meaning of the lessee's insurance policy as a matter of law so as to require ICW to defend and indemnify the lessee for any judgment which might be rendered against the lessee as a result of the unlawful detainer action.

## FACTUAL SYNOPSIS

On December 26, 1984, the Fragomenos entered into an agreement with E & L General Partnership (E & L) to lease certain premises for the operation of a dry cleaning business. On August 14, 1985, ICW issued to the Fragomenos a "Comprehensive Policy for Dry Cleaners and Laundry Owners" (the policy). The policy contained a "Personal Injury Liability Insurance Endorsement." This endorsement provided: "The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called 'personal injury') sustained by any person or organization and arising out of one or more of the following offenses: [¶] Group A — false arrest, detention or imprisonment or malicious prosecution.

"Group B — the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured.

"Group C — wrongful entry or eviction, or other invasion of the right of private occupancy."

The endorsement also provided: "When used in reference to this insurance 'damages' means only those damages which are payable because of personal injury arising out of an offense to which this insurance applies."

On April 15, 1986, E & L filed an unlawful detainer action against the Fragomenos.[1] On June 18, 1986, E & L filed a second unlawful detainer action against the Fragomenos alleging the Fragomenos breached their lease agreement by, inter alia, operating their cleaning store beyond permitted load capacity, operating a shoe and handbag repair service, and cleaning clothing brought in from other outlets. E & L sought recovery of the premises, damages for reasonable rental value of $189.63 per day, costs, attorney's fees and punitive damages.

The Fragomenos tendered the defense of these two actions to ICW. ICW subsequently denied coverage for both unlawful detainer actions. The

---

[1] In its moving papers, ICW incorrectly appended E & L's second complaint against the Fragomenos as its copy of the first complaint. The Fragomenos' moving papers contained copies of neither complaint. The record, therefore, does not contain the allegations of the first unlawful detainer action. Since the parties have not stated otherwise, we assume the allegations contained within the two complaints are substantially similar.

Fragomenos then commenced an action against ICW for declaratory relief, breach of contract and breach of the covenant of good faith and fair dealing.

ICW moved for summary judgment arguing there was no duty to defend or indemnify the Fragomenos under the policy. The Fragomenos brought a cross-motion for summary adjudication on their declaratory relief action. In their cross-motion, the Fragomenos argued that the basis for E & L's unlawful detainer actions was the damage to its property allegedly caused from excessive heat emanating from the Fragomeno's business.

The trial court granted ICW's motion for summary judgment and denied the Fragomeno's motion for summary adjudication. The Fragomenos timely appealed from the summary judgment.

DISCUSSION

I. THE TRIAL COURT DID NOT ERR IN GRANTING ICW'S SUMMARY JUDGMENT MOTION.

A. *The Standard of Review.*

The facts here are undisputed. Accordingly, we are only required to review the trial court's construction of the policy. ■ Since the interpretation of an insurance policy is an issue of law, " 'it is the duty of the appellate court . . . to make its own independent determination of the meaning of the language used in the contract under consideration.' " (*Bareno* v. *Employers Life Ins. Co.* (1972) 7 Cal.3d 875, 881 [103 Cal.Rptr. 865, 500 P.2d 889].)

Our construction of the policy is governed by certain, well-settled principles. ■ The words used in an insurance policy are to be construed according to their plain meaning and the reasonable expectations of the insured. (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807-808 [180 Cal.Rptr. 628, 640 P.2d 764].) Therefore, the insurance policy is construed from the perspective of a reasonable lay person. (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].) Any ambiguity must be resolved in favor of the insured. (*Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 464 [113 Cal.Rptr. 711, 521 P.2d 1103].) However, courts should not indulge in strained constructions to find coverage. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920].)

B. *The Unlawful Detainer Action Does Not Constitute an Invasion of the "Right to Private Occupancy" Within the Meaning of the Policy.*

■ ICW is correct in suggesting that the policy only covers tort, as opposed to contract, liability. The Fragomenos concede to this position. The policy provides that ICW "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages . . . ." Courts have construed this language to limit coverage to tort liability only. (See *Fireman's Fund Ins. Co.* v. *City of Turlock* (1985) 170 Cal.App.3d 988, 997-998 [216 Cal.Rptr. 796]; *International Surplus Lines Ins. Co.* v. *Devonshire Coverage Corp.* (1979) 93 Cal.App.3d 601, 610-611 [155 Cal.Rptr. 870].)

Accordingly, ICW is obligated to defend and indemnify the Fragomenos for any act constituting an invasion of the right of private occupancy which incurs tort liability as opposed to contract liability.

The facts are undisputed that the Fragomenos took possession of the subject property in accordance with a written lease. ■ It is well settled in California that a written lease is a form of contractual arrangement between parties to the lease pertaining to property as well as constituting a conveyance of property. (*Parker* v. *Superior Court* (1970) 9 Cal.App.3d 397, 400 [88 Cal.Rptr. 352, 67 A.L.R.3d 743].) Accordingly, any breach of the lease will give rise to contractual damages in accordance with the provisions of the lease, usually in the form of rents when the breach is for failure to pay rent.

In this instance the landlord used the summary device of an unlawful detainer action to dispossess the Fragomenos of the premises, as a result of an alleged breach of the contractual provisions of the lease other than for failure to pay rent. It is undisputed that the events giving rise to the action in the trial court occurred during the unexpired term of the lease.

■ Paramount to our considerations is whether or not the unlawful detainer action sounds in contract or in tort. Several decisions in California have contained dictum which would seem to indicate that an unlawful detainer action sounds in tort. Those decisions are discussed and analyzed hereafter, but it is apparent that the decisions fail to definitively and persuasively hold that an unlawful detainer action is, without exception, founded upon tortious conduct.

In *Greenberg* v. *Koppelow* (1946) 76 Cal.App.2d 631, 634 [173 P.2d 821], a case involving the determination of the correct measure of damages

against a holdover tenant, the court determined that the statutory damages for unlawful detainer were applicable and not the measure of damages provided for in the written lease. More importantly for purposes of this decision, the court made the following comment: "On May 22 respondents filed this action in unlawful detainer, which form of action 'does not arise upon contract, but sounds in tort. . . .' [Citation.] By the election of the respondents to serve notice and sue, their former *tenant* was automatically converted into a *wrongdoer* [citation] or a *trespasser* [citation]." (Original italics.) (*Id.,* at p. 634.)

*Greenberg* is distinguishable from the facts of this case in that a holdover tenant was involved following the expiration of a leasehold estate some five months prior to the commencement of the holdover period when the landlord served the tenant with a notice to quit the premises. It is clear that the lessee's failure in *Greenberg* to either accept new leasehold provisions or to vacate the premises pursuant to the notice to quit resulted in the lessee becoming a trespasser, thus giving rise to a tort cause of action and the right of the landlord to dispossess the tortious tenant by way of the summary procedure of unlawful detainer.

In *Cowell* v. *Snyder* (1911) 15 Cal.App. 634 [115 P. 961], a case involving a written lease and the tenant's right to extract minerals at a given price and a holding over by the tenant beyond the normal term of the lease without accepting the new terms proposed by the landlord, the court stated as follows: "But the cases also hold that where a tenant holding over beyond the expiration of his term announces that he will not accept the new terms proposed by his landlord, no agreement results and, therefore, no contract by which the new terms become operative between the parties. In such a case, where the landlord does not receive the rental from the tenant, the tenant becomes, in effect, a trespasser and liable to the landlord for the reasonable rental value of the premises so occupied by him to be collected as damages. This is the general rule. We quote: 'A tenant for years who holds over after the expiration of his term, without paying rent or otherwise acknowledging a continuance of the tenancy, becomes either a trespasser or a tenant, at the option of the landlord. Very slight acts on the part of the landlord, or a short lapse of time, are sufficient to conclude his election and make the occupant his tenant. But the tenant has no such election; his mere continuance in possession fixes him as tenant for another year, if the landlord so elects, although the tenant has refused to renew the lease and given notice that he has hired other premises. . . . He remains a trespasser, and can only become a tenant by mutual agreement.' " (*Id.,* at p. 638.)

Again, *Cowell* is distinguishable on grounds that the holdover tenant remained on the premises at the expiration of the regular term of the lease.

Other cases have held that an unlawful detainer is not based on contract but these cases stop short of indicating that an unlawful detainer action is based upon tort.

In *D'Amico* v. *Riedel* (1949) 95 Cal.App.2d 6 [212 P.2d 52], the court states: "An unlawful detainer action is not upon contract but for recovery of possession of the premises and incidentally for the damages occasioned by the unlawful detainer." (*Id.,* at p. 9.)

This appellate division in *Fifth & Broadway Partnership* v. *Kimny, Inc.* (1980) 102 Cal.App.3d 195 [162 Cal.Rptr. 271, 7 A.L.R.4th 580], stated as follows: "An unlawful detainer action is not based upon contract [citations]; it is a statutory proceeding and is governed solely by the provisions of the statute creating it." (*Id.,* at p. 200.)

In *Kwok* v. *Bergren* (1982) 130 Cal.App.3d 596 [181 Cal.Rptr. 795], a case deciding whether evidence before the trial court supported its finding that appellants were properly served with a three-day notice to pay rent or quit, stated: " 'An unlawful detainer action is not based upon contract . . .; it is a statutory proceeding and is governed solely by the provisions of the statute creating it.' [Citations.]" (*Id.,* at p. 599.)

Juxtapositioned to the cases discussed, *ante,* is a comment by the noted California encyclopedist B.E. Witkin that: "The summary proceedings for forcible entry, forcible detainer and unlawful detainer are based on the English statutes which abrogated the common law right of a person wrongfully dispossessed to regain possession of real property by force. The statutory situations in which the remedy of unlawful detainer is available are exclusive, and the statutory procedure must be strictly followed. . . . [¶] The proceeding has characteristics of a contract action, e.g., it usually involves a lease, and often seeks its termination and recovery of rent. But this type of relief is deemed incidental to the main purpose of the suit— recovery of possession. [Citation.]" (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 588, p. 53.)

■ It is clear that this summary and statutory procedure providing for an expeditious determination of the right to recover real property is proper if used for that purpose to aid recovery, but in order to determine whether this summary and statutory procedure sounds in contract or in tort the *gravamen* of the facts giving rise to the right to recovery must be examined. If the right to recover realty emanates from the breach of a lease provision occurring during an unexpired term of a lease, then the right to recover has its inception in a contractual arrangement between the parties. If the right to recovery is based upon a civil wrong such as possession of property by a

trespasser *ab initio*, or by a holdover tenant as a resulting trespasser, or by an encroacher then the right to recover possession of the property by way of the summary and statutory procedure of unlawful detainer has its inception in tortious conduct.

It is therefore necessary to analyze and determine whether or not the right to possession by the landlord in this instance had its inception in a lease or contractual right or whether the right to possession by the landlord had its inception in some sort of tortious conduct by the lessee.

*C. The Inception of the Right of Landlord to Recover the Premises Was in a Contractual or Leasehold Arrangement Between the Parties.*

■ It is undisputed that the appellants in this instance breached the written lease with the landlord. It is irrefutable that the landlord's right to recover the real property emanated from the breach of the lease occurring within the unexpired term of the lease by reason of the lessee's unagreed to use of the premises. Therefore, the summary procedure of unlawful detainer being utilized to prevent interference with the landlord's right to private occupancy by virtue of the intraterm leasehold breach was contractual. As a matter of law, the lessee's insurance policy with ICW gives no right in the Fragomenos for defense and indemnification as a result of this unlawful detainer action which had its origins in the landlord's right to possession as a result of lessee's intraterm breach of the lease contract.

DISPOSITION

The summary judgment for respondent ICW is affirmed. The order denying appellants' motion for summary adjudication of issues is affirmed. Respondents are to recover their costs on appeal.

Lillie, P. J., concurred.

**JOHNSON, J.**—I respectfully dissent. The dispositive issue in this case is whether damages recoverable in an unlawful detainer action sound in tort or contract. If they sound in tort, as an unbroken line of cases spanning 70 years so holds, Insurance Company of the West (ICW) is obligated to defend the Fragomenos in the unlawful detainer action brought by their landlord.

Prior to discussing the case authority on this issue, I first briefly address certain preliminary issues.

## I. THE TERM "PERSONAL INJURY" INCLUDES ANY INJURY ARISING FROM THE TORTIOUS ACTS ENUMERATED IN THE ENDORSEMENT.

Since coverage is limited to damages arising from personal injury, "personal injury" must be defined within the meaning of the policy. ICW argues "personal injury" only includes offenses against persons where the injuries suffered are emotional in nature. In the context of this particular insurance contract, this assertion is incorrect.

The policy defines personal injury as injury "sustained by any person or organization and arising out of one or more of the following offenses: . . . invasion of the right of private occupancy."[1] "[T]he term 'personal' is used in a highly specialized sense. It does not mean physical damage to a person; rather it means injury arising out of one or more specified offenses." (3 Cal. Insurance Law & Practice (Bender ed. 1988) § 49.40[3], p. 49-69; see *Nichols* v. *Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 775-776 [215 Cal.Rptr. 416] ["the 'personal injury' contemplated by the business liability policies was the 'wrongful entry, eviction or other invasion of the right to private occupancy' relating to some interest in real property"]; *Cincinnati Ins. Co.* v. *Davis* (1980) 153 Ga.App. 291 [265 S.E.2d 102, 105] [insurance company was obligated "to defend and insure against any sums due by the . . . [insured] *arising out of* a wrongful entry or eviction or other invasion of the right . . . to peaceful and private occupancy"], original italics.)

While, as we discuss shortly, the majority elects not to follow settled authority that an unlawful detainer action sounds in tort, it does choose to follow cases holding the policy language is properly construed to cover only tort, as opposed to contract, liability. (See *Fireman's Fund Ins. Co.* v. *City of Turlock* (1985) 170 Cal.App.3d 988, 997-998 [216 Cal.Rptr. 796]; *International Surplus Lines Ins. Co.* v. *Devonshire Coverage Corp.* (1979) 93 Cal.App.3d 601, 611 [155 Cal.Rptr. 870].) This seems a far more debatable proposition than the one over which we differ today. After all, the language ostensibly limiting the personal liability endorsement to tort actions is far from clear on this issue.

In both *Fireman's Fund* and *International Surplus,* the Courts of Appeal conclude the phrase "shall become legally obligated to pay as damages" is the functional equivalent to "damages for liability imposed by law" which, in turn, refers to damages which are "ex dilecto" rather than "ex

---

[1] ICW's assertion that "personal injury" is not defined in the policy ignores the policy's plain language.

contractu." (*Ibid.*) The courts therefore conclude contract damages are excluded under this language.

Such a hypertechnical construction violates the most elementary rule of construction for policy language. "The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089]; accord *Ponder* v. *Blue Cross of Southern California* (1983) 145 Cal.App.3d 709, 723 [193 Cal.Rptr. 632].) At the very least this language is ambiguous, thereby necessitating courts to construe it against the insurer. (*Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 271 [203 Cal.Rptr. 672].)

Nonetheless, I note the Fragomenos do not argue contract damages are covered under the endorsement. Moreover, I believe the established law is clear that unlawful detainer actions sound in tort not contract. Accordingly, I see no reason to reach the issue whether this insurance policy covers contract damages as well and move on to the remaining issues.

## II. THE PHRASE "INVASION OF THE RIGHT OF PRIVATE OCCUPANCY" IS SUFFICIENTLY BROAD TO ENCOMPASS UNLAWFUL DETAINER ACTIONS.

The Fragomenos argue the policy covers the unlawful detainer actions because E & L General Partnership (E & L) is claiming a right to reoccupy its premises following the Fragomenos' alleged breach of their lease. ICW does not dispute this interpretation.

The phrase "invasion of the right of private occupancy" is, as ICW conceded during oral argument, ambiguous. (See *Gardner* v. *Romano* (E.D.Wis. 1988) 688 F.Supp. 489, 493.) This ambiguity has lead courts to find coverage in a variety of situations. (See e.g., *Gardner* v. *Romano, supra,* 688 F.Supp. at p. 493 [landlord's discrimination against potential tenants based upon race violated their private right to occupancy]; *Goshen* v. *Grange Mut. Ins. Co.* (1980) 120 N.H. 915 [424 A.2d 822, 824] [town's delay in providing property owner with subdivision approval violated his right to private occupancy]; *Ranger Ins. Co.* v. *Bal Harbour Club, Inc.* (Fla.App. 1985) 509 So.2d 940, 942 [social club's refusal to approve purchasers' membership application because of their religion violated the purchasers' private right to occupancy where membership was a condition to purchase of their home].)

Although courts have grappled with this language to determine whether certain acts are covered by the policy, the phrase "right to private

occupancy" has never been defined. However, the phrase clearly encompasses an insured's interference with another's "right" to possess an interest in real property. (See *Nichols* v. *Great American Ins. Companies, supra,* 169 Cal.App.3d at p. 776 [complaint must allege an invasion of an interest attendant to the possession of real property].)

The very nature of an unlawful detainer action is the wrongful possession of real property in violation of another's superior rights. "The remedy of unlawful detainer is designed to provide means by which the timely possession of premises which are wrongfully withheld may be secured to the person entitled thereto." (*Knowles* v. *Robinson* (1963) 60 Cal.2d 620, 625 [36 Cal.Rptr. 33, 387 P.2d 833]; see *Vasey* v. *California Dance Co.* (1977) 70 Cal.App.3d 742, 748 [139 Cal.Rptr. 72] ["An unlawful detainer action is founded upon unlawful occupation"]; *Greenberg* v. *Koppelow* (1946) 76 Cal.App.2d 631, 634 [173 P.2d 821] ["By the election of the respondents to serve notice and sue, their former *tenant* was automatically converted into a *wrongdoer* [citations] or a *trespasser* [citation]"], original italics; 4 Miller & Starr, Current Law of Cal. Real Estate (1977) Unlawful Detainer, § 27:124, p. 474.) Thus, the "right to private occupancy" includes a landlord's right to retake possession of his premises following his tenant's breach of the lease.

Here, E & L alleges the Fragomenos have breached the lease agreement and, therefore, they are no longer entitled to remain on the premises. Further, the Fragomenos have refused to quit the premises despite a notice to do so. Assuming these allegations are true, the Fragomenos, by refusing to vacate, are interfering with E & L's right to reoccupy the premises. Accordingly, provided the damages sought are within the policy provisions, ICW must defend the Fragomenos in E & L's unlawful detainer actions and pay all sums due which are covered by the policy.

III. The Damages Recoverable in an Unlawful Detainer Action Are Based Upon a Tort Theory of Liability.

It is at this point where I diverge from the majority's opinion.

An insurance company's obligation to defend and indemnify its insured only arises when there is a potential for recovery of covered damages. (*Gray* v. *Zurich Ins. Co.* (1966) 65 Cal.2d 263, 276-277 [54 Cal.Rptr. 104, 419 P.2d 168].) Therefore, the damages sought by E & L in its unlawful detainer actions must be tort, rather than contract, damages.

The majority seeks, without any citation to authority, to carve an exception to the uncontroverted rule that damages recoverable in an unlawful

detainer action sound in tort. This exception is based upon the purported distinction between unlawful detainer actions arising from a contractual breach by the tenant which then terminates the leasehold versus the expiration of the leasehold followed by a tenant's holdover. This distinction ignores the very nature of unlawful detainer and the damages recoverable thereunder.

First, despite the majority's suggestion to the contrary, an unlawful detainer action is not a contract action. (*Kwok* v. *Bergren* (1982) 130 Cal.App.3d 596, 599 [181 Cal.Rptr. 795] [" 'An unlawful detainer action is not based upon contract . . . .' "]; *Fifth & Broadway Partnership* v. *Kimny, Inc.* (1980) 102 Cal.App.3d 195, 200 [162 Cal.Rptr. 271, 7 A.L.R.4th 580]; *D'Amico* v. *Riedel* (1949) 95 Cal.App.2d 6, 9 [212 P.2d 52].)[2] Thus, to say the gravamen of some unlawful detainer actions is contractual, thereby transmuting the recoverable damages into contract damages, is erroneous. The true gravamen of *every* unlawful detainer action is the wrongful possession of real property. (See *Vella* v. *Hudgins* (1977) 20 Cal.3d 251, 255 [142 Cal.Rptr. 414, 572 P.2d 28]; *Gonzales* v. *Gem Properties, Inc.* (1974) 37 Cal.App.3d 1029, 1034 [112 Cal.Rptr. 884].)

Second, "[i]t is well settled that damages allowed in unlawful detainer proceedings are only those which result from the unlawful detention and accrue during that time." (*Vasey* v. *California Dance Co., supra,* 70 Cal.App.3d at p. 748; accord *Mihans* v. *Municipal Court* (1970) 7 Cal.App.3d 479, 489 [87 Cal.Rptr. 17]; *Haig* v. *Hogan* (1947) 82 Cal.App.2d 876, 878 [187 P.2d 426]; *Chase* v. *Peters* (1918) 37 Cal.App. 358, 362 [174 P. 116].) Since the damages only arise from the unlawful detention, it is irrelevant whether the unlawful detention resulted from a contractual breach or a trespass; in both instances the defendant remains on the property unlawfully.

Finally, the " 'damages awarded . . . in an unlawful detainer action for withholding possession of the property are not "rent" but are in fact damages.' [Citation.] Thus, a landlord is entitled to recover as damages the reasonable value of the use of the premises during the time of the unlawful detainer either on a tort theory or a theory of implied-in-law contract." (*Adler* v. *Elphick* (1986) 184 Cal.App.3d 642, 649 [229 Cal.Rptr. 254]; accord *Lehr* v. *Crosby* (1981) 123 Cal.App.3d Supp. 1, 9 [177 Cal.Rptr. 96];

---

[2] The majority relies upon an innocuous statement in Mr. Witkin's California Procedure (3d ed. 1985) which recognizes an unlawful detainer action "has characteristics of a contract action" as contrary authority (see *ante*, p. 830). Such reliance illustrates the dearth of authority supporting the majority's decision. An unlawful detainer action without question has characteristics of a contract action. This does not alter the fact, reiterated by every opinion to address the subject, that it is not a contract action. (See *infra*.)

*Greenberg* v. *Koppelow, supra,* 76 Cal.App.2d at p. 634 [unlawful detainer " 'does not arise upon contract, but sounds in tort . . . .' "]; *Stockton Morris Plan Co.* v. *Carpenter* (1936) 18 Cal.App.2d 205, 210 [63 P.2d 859]; *Cowell* v. *Snyder* (1911) 15 Cal.App. 634, 638 [115 P. 961].)[3] In sum, all available authorities recognize the damages recoverable in an unlawful detainer action sound in tort. Accordingly, I would hold ICW is obligated to defend the Fragomenos and indemnify them for all damages arising from their unlawful detainer of the leased premises. (See *Fireman's Fund Ins. Co.* v. *City of Turlock, supra,* 170 Cal.App.3d at pp. 997-998; *International Surplus Lines Ins. Co.* v. *Devonshire Coverage Corp., supra,* 93 Cal.App.3d at p. 611.) However, ICW would not be required to indemnify the Fragomenos for any exemplary damages they must pay since such damages are not insurable. (See *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 158 [181 Cal.Rptr. 784, 642 P.2d 1305].)

Appellants' petition for review by the Supreme Court was denied April 25, 1989.

---

[3] The fact damages may also be recoverable under a quasi-contract theory does not defeat ICW's duty to defend. This duty arises whenever there is a *possibility* of coverage under *any* theory that could be based on the facts involved. (See *Gray* v. *Zurich Ins. Co., supra,* 65 Cal.2d at pp. 276-277; *CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 605 [222 Cal.Rptr. 276]; Cal. Practice Guide: Bad Faith (TRG 1988) § 8:44, pp. 8-10.) Here, such a possibility arises since the damages are also recoverable under a tort theory.