[Civ. No. 47779. Second Dist., Div. Five. Jan. 31, 1977.]

ALBAN J. VEZINA, Plaintiff and Appellant, v.
CONTINENTAL CASUALTY COMPANY,
Defendant and Respondent.

COUNSEL

William P. Camusi for Plaintiff and Appellant.

Chase, Rotchford, Drukker & Bogust and Lawrence O. de Coster for Defendant and Respondent.

OPINION

**ASHBY, J.**—Plaintiff Vezina brought this action against defendant Continental Casualty Company to recover on an insurance policy for extensive personal injuries sustained when plaintiff's car was struck by a car driven by one Shinn, an employee of Federal Envelope Company, defendant's insured. The trial court granted judgment on the pleadings

to defendant, on the ground that plaintiff was bound by a prior judgment against plaintiff and in favor of Envelope. Plaintiff appeals.

The prior judgment was in a personal injury action brought by Vezina against Shinn and Envelope in Orange County Superior Court No. 164768.[1] That trial resulted in a jury verdict against Shinn but in favor of Envelope. The judgment in favor of Envelope was affirmed on appeal in a nonpublished opinion, 4 Civil 13227.

The pertinent facts were summarized by the Court of Appeal as follows:

"Envelope manufactures paper products, and at the time in question had plants in Los Angeles and Buena Park. Envelope employed Shinn as an office manager in 1966. Shinn's duties originally concerned the Los Angeles plant. Subsequently he was given certain added duties requiring visits to the Buena Park facility, but was required to provide his own transportation. Shinn had some discretion over his coming and going, and was often permitted to go to or return home from Buena Park without first going to Los Angeles.

"Shinn's home is southwest of the Buena Park plant. His usual route home from Buena Park was south until almost parallel with his house, and then west. Shinn has a friend who also lives southwest of the Buena Park plant. This friend lives farther south than Shinn, however.

"Shinn's driver's license had been suspended by the California Department of Motor Vehicles on November 22, 1965, following a second conviction for drunk driving. Shinn's license was reinstated on November 2, 1967.

"On February 1, 1968, the day of the accident, Shinn left the Los Angeles plant on his lunch hour. After doing some personal errands, Shinn visited a restaurant and consumed a quantity of liquor. Shinn then telephoned Envelope and requested and received permission to go to the Buena Park plant and then to go directly home.

"Shinn continued to drink at the restaurant and at another bar before going to Buena Park. He arrived at the plant late in the afternoon, and

---

[1] In making its ruling, the trial court in this case took judicial notice of the pleadings, jury instructions, judgment, and opinion of the Court of Appeal in that matter. (See *Kachig* v. *Boothe*, 22 Cal.App.3d 626, 630 [99 Cal.Rptr. 393].)

spent a short time there. After leaving, he stopped in a third bar south of the plant and consumed more alcohol.

"Shinn left the bar considerably inebriated. Proceeding south, he bypassed his usual turn before making a right turn in the general direction of home. Apparently traveling at excessive speed, Shinn failed to notice in time that the traffic ahead was stopped at a stop sign. Unable to stop, Shinn rear-ended Vezina's car, and Vezina's car was shoved into the car in front of it. The accident caused Vezina very considerable permanent physical injury.

"There are conflicts in the evidence as to when Envelope learned of Shinn's drinking problems, and whether Shinn was proceeding home or to his friend's house prior to the accident. Viewing the evidence most favorably to the respondent, it was established Envelope did not learn of the drinking or the license suspension until after the accident, and that Shinn was not on his way home." (Fns. omitted.)

In rejecting Vezina's contention that the evidence established as a matter of law that Envelope was vicariously liable for Shinn's negligence under the doctrine of respondeat superior, the court stated:

"There is no question that if Shinn was on a special errand, the scope of employment would include his direct return home. [See *Hinjosa* v. *Workmen's Comp. Appeals Bd.,* 8 Cal.3d 150, 156-160 (104 Cal.Rptr. 456, 501 P.2d 1176); *Trejo* v. *Maciel,* 239 Cal.App.2d 487, 495-496 (48 Cal.Rptr. 765).] He had gone home from Buena Park without first going to Los Angeles in the past, and he had received express permission to do so on the day of the accident. But even assuming a benefit to Envelope and no prior substantial deviations or departures, Shinn's destination is a critical part of Vezina's case. If he was not on his way home at the time of the accident, he was not within the scope of employment.

"Shinn testified he was on his way home when he left Buena Park. His testimony was corroborated by evidence of statements made by him shortly after the accident. Shinn, however, was impeached by prior inconsistent statements to the effect that he was on his way to his friend's house. These statements were made in his deposition, his answers to interrogatories, his statements to a probation officer, and his statements to Mr. Sutton, his attorney, in the criminal trial involving the same accident. Moreover, Shinn's route is subject to either inference—he had

gone farther south than his home, but not so far south as to be clearly on his way to his friend's house. Thus there is substantial conflict in the evidence regarding Shinn's destination at the time of the accident." (Fn. omitted.)

The theory of plaintiff's first amended complaint in the instant matter is that Shinn was an additional insured under an umbrella excess third party liability policy issued by Continental to Envelope. This policy provides in part as follows:

"DEFINITIONS"

"1. *Named Insured and Insured*

"    .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(b) The unqualified word 'Insured', wherever used in this policy, includes not only the Named Insured but also,

"(1) any partner, executive officer, director, stockholder or employee of the Named Insured, while acting in his capacity as such. . . ."

Plaintiff alleges that at the time of the collision Shinn was "driving his automobile in his capacity as an employee of FEDERAL ENVELOPE COMPANY, and SHINN was acting in his capacity as an employee of FEDERAL ENVELOPE COMPANY at the time and place of said accident pursuant to the terms and provisions of said policy of insurance as hereinabove described."

■ The trial court correctly concluded that the principle of collateral estoppel prevents plaintiff from attempting to litigate in this action whether Shinn was "acting in his capacity as an employee" of Envelope, because that factual issue was necessarily decided adversely to plaintiff in the prior action. ■ ". . . The doctrine of res judicata is said to have a 'double aspect: (1) it "precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction." (2) "Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action." ' (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439], quoting from *Bernhard* v. *Bank of America,*

19 Cal.2d 807, 810 [122 P.2d 892]; see also *Solari* v. *Atlas-Universal Service, Inc.,* 215 Cal.App.2d 587, 592 [30 Cal.Rptr. 407].) The latter aspect of the doctrine is known as collateral estoppel. . . ." (*Ponce* v. *Tractor Supply Co.,* 29 Cal.App.3d 500, 504 [105 Cal.Rptr. 628].)[2] It is based on the sound public policy of limiting litigation when a party has already had one fair trial on an issue. (*Bernhard* v. *Bank of America, supra* at p. 811.)

The record shows that the factual issue whether Shinn was acting in the scope or course of his employment at the time of the accident was decided in the prior case. We find no merit to plaintiff's argument that this is not the very same issue which is to be decided in the instant case. The authority relied upon by plaintiff, *Exchange Cas. & Surety Co.* v. *Scott, supra,* 56 Cal.2d 613, 619-620, does not support his argument.

In the *Exchange* case, the owner of a car, Sebastian, drove it up to the entrance to a car wash, got out of the car, paid the attendant and left the premises. When the automobile reached the end of the washing process, a car wash employee, Scott, finding no owner to take possession of the car, drove the automobile to a different part of the lot, where he struck and injured another employee, Garmon. Garmon brought an action against Scott, the driver, and against Sebastian, the owner of the automobile, basing Sebastian's alleged liability exclusively on former section 402 of the Vehicle Code, now section 17150, which made every owner of a motor vehicle liable for injury caused by the negligent operation of such vehicle by any person using the automobile "with the permission, express or implied," of such owner. Judgment went against Scott but in favor of Sebastian, and the judgment in favor of Sebastian was affirmed on appeal on the ground there was substantial evidence to support a conclusion that Sebastian did not give implied consent to drive the car away from the usual place for freshly washed cars.

Thereafter, Garmon sued Standard Accident Insurance Company, Sebastian's insurer, based upon a provision of the policy that the word "insured" included any person using the automobile "with the permission of" the named insured.

---

[2]The first aspect of res judicata is not applicable here because plaintiff's cause of action against Continental on the insurance policy is not the same as plaintiff's tort cause of action against Shinn and Envelope. (*Exchange Cas. & Surety Co.* v. *Scott,* 56 Cal.2d 613, 620 [15 Cal.Rptr. 897, 364 P.2d 833].)

On appeal from a judgment in Garmon's favor, Standard argued that Garmon's suit was barred by the determination in the prior judgment that Sebastian did not give his permission within the meaning of Vehicle Code section 402. The court rejected that contention on the following ground: "[T]he prior action against Sebastian was based solely upon his imputed statutory liability as an owner under Vehicle Code, section 402, which section must be construed in a manner not favoring imposition of liability on the otherwise nonnegligent owner. The present action by Garmon against Standard is founded exclusively on the claim that Scott is an additional insured within the terms of an insurance contract issued by Standard, and it is well established that uncertainties in such contracts must be construed in favor of imposing liability on the insurer. Specifically, uncertainties created by the language of the contract as to the persons protected are to be construed in favor of imposing liability on the insurer, and as the injured third party, Garmon may take advantage of the rules of strict construction applicable against Standard. It is thus manifest that even though the evidence as to Scott's permitted operation of the Sebastian automobile may have been similar in the prior and in the instant action, the issue of permission to be decided in each proceeding was different because of the operation of the opposing modes of construction applicable to the imputed liability statute in the first action, and the insurance contract in the present action. It follows that the question of Scott's permission within the terms of Standard's policy was not litigated in the prior action and the principles of collateral estoppel do not apply in favor of Standard." (*Exchange Cas. & Surety Co. v. Scott, supra,* 56 Cal.2d at pp. 619-620; citations omitted.)

Thus the basis of the holding in *Exchange* was that a significant difference existed between "permission" as it was strictly construed for purposes of Vehicle Code section 402 and "permission" as construed against the insurer in the policy. "It is manifest from what we have heretofore said that the scope of 'permission' under such a policy may in certain situations be broader than the scope of 'permission' under former section 402, because a different rule of construction is applicable to the owner's liability statute than to the construction of an automobile liability policy, and 'permission' within the two contexts need not be construed in a similar manner." (*Id.,* at pp. 620-621.) Thus the decision involving the narrow, strict construction of the term in the prior case did not necessarily preclude a different result involving the broader more liberal construction of the term in the subsequent action. (*Id.,* at p. 621.)

There is no such dichotomy of contrasting rules of construction in the instant case. There is no rule of narrow or strict construction of the doctrine of respondeat superior which was involved in the prior action. If anything, the doctrine is liberally applied in accordance with the modern theory that its purpose is to allocate the risk to the business enterprise, which is best able to absorb it as a cost of doing business and through liability insurance, rather than to allocate the risk to the innocent injured party. (*Hinman* v. *Westinghouse Elec. Co.,* 2 Cal.3d 956, 959-960 [88 Cal.Rptr. 188, 471 P.2d 988].) The case law on respondeat superior is well developed and, unlike the *Exchange* case, there is no persuasive reason why this case law should not equally be applicable to the language "while acting in his capacity as such [employee]" in the insurance policy.[3] Plaintiff would have us discard this well-developed set of principles and establish a different set of rules for determining whether an employee is "acting in his capacity as an employee" than for determining whether an employee is "acting in the scope of his employment." Plaintiff offers no rational basis for making such a distinction in this case.

The implication of *Exchange* is that if the same jury could decide both cases, it could rationally conclude, after resolving evidentiary conflicts and finding the facts, that the evidence failed to establish "permission" as defined in Vehicle Code section 402 but did establish "permission" within the meaning of the policy. But in the instant case it would not be rational for such a jury, after determining the fact that Shinn was not heading home at the time of the accident, to conclude that Shinn was *not* acting within the scope of employment but *was* acting in his capacity as an employee. As applied to this case, there is no significant difference between the doctrine of respondeat superior and the standard set forth in the insurance policy, and therefore the judgment in the first action precludes plaintiff from attempting to relitigate the same factual issue that was previously decided.[4]

---

[3]Neither party has been able to cite a case specifically construing such language. (Cf. *Ferrarell* v. *Robinson,* 11 Ariz.App. 473 [465 P.2d 610, 614] (statutory liability of broker's surety for certain acts committed by the broker "in his capacity as such").)

[4]In *Gray* v. *Sawatzki,* 291 Mich. 491 [289 N.W. 227] it had been determined in the prior tort action that the employee who negligently drove the employer's vehicle was not acting within the scope of his employment at the time of the accident. Subsequently the plaintiff attempted to recover on the employer's insurance policy based upon the provision that the named insured included anyone using the automobile with the permission of the insured. The court held that the prior determination regarding scope of employment was conclusive on the issue of permission. " 'When the servant is outside

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 14, 1977. Mosk, J., was of the opinion that the petition should be granted.

---

the scope, he is outside the consent; the terms are coextensive, and, as used in this sense, have the same meaning. The scope of employment is merely the measuring rod by which it can be determined whether the servant was acting within the implied consent of the employer.' " (289 N.W. at p. 228.)