[S.F. No. 24835. June 9, 1986.]

PRODUCERS DAIRY DELIVERY COMPANY, INC., et al.,
Plaintiffs and Appellants, v.
SENTRY INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

James P. Wagoner, David H. Bent and McCormick, Barstow, Sheppard, Wayte & Carruth for Plaintiffs and Appellants.

Chinello, Chinello, Shelton & Auchard, John D. Chinello, Jr., and Andrew B. Jones for Defendant and Respondent.

Samuel E. Meredith, Karls J. Knieps and Goshkin, Pollatsek, Meredith & Lee as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**LUCAS, J.**—We granted a hearing in this case to decide whether a "Standard Workers' Compensation and Employers' Liability Insurance Policy" may be construed to extend coverage to an employer for tort liability incurred due to injuries to a nonemployee. We conclude that the policy provides no such coverage.

### I. FACTS

Plaintiffs Producers Dairy Delivery Company, Inc. (Producers) and Federal Insurance Company (Federal) appeal from a summary judgment entered in favor of defendant Sentry Insurance Company (Sentry), in a declaratory relief action seeking to establish that a workers' compensation and employ-

ers' liability policy issued by Sentry covered liability incurred by Producers to a nonemployee resulting from an industrial accident.

Producers is a dairy supplying milk in the California central valley area. LAS Corporation (LAS) is a separate entity created by Producers to operate a milk distributing business. LAS independently contracted with Producers to furnish teamster truckers to deliver Producers's dairy products, using Producers' delivery trucks. Producers was LAS's primary customer, although LAS did have a common carrier permit from the Public Utilities Commission, and hauled some products for other companies. Producers and LAS were insured by two carriers: Sentry had issued to Producers and LAS jointly a "Standard Workers' Compensation and Employers' Liability Policy,"[1] and Federal provided both companies with a general public liability coverage.

Henry Noyes, one of LAS' teamster truckers, was seriously injured when he fell while unloading milk from one of Producers's trucks. Noyes, as an employee of LAS, sought and collected workers' compensation benefits under the Sentry policy. Noyes and his wife also sued Producers for personal injuries and loss of consortium, respectively, on the theory that Producers failed to maintain the delivery truck in a safe condition.

Federal defended Producers in the Noyes action contending that Noyes, who was hired by LAS, was actually an employee of Producers, and thus was limited to his exclusive remedy under the workers' compensation laws. Thereafter, Sentry filed a lien complaint in intervention to recover the workers' compensation benefits it had paid to Noyes as an employee of LAS. Seven weeks after the Noyes trial had commenced, Producers demanded a defense from Sentry, which Sentry refused. Following a 10-week jury trial, a special verdict was rendered finding Noyes was not an employee of Producers. Producers was found liable to the Noyes as follows: $400,000 to Henry Noyes, and $22,000 to his wife. The judgment was affirmed on appeal, but prior to asking this court for a hearing, Producers settled with the Noyes for $548,000 (an amount less than the aggregate amount of the judgment plus costs and accrued interest). The court entered judgment in favor of Producers on Sentry's complaint in intervention.

Following settlement of the Noyes action, Producers and Federal brought the present declaratory relief action seeking to establish that the "employers' liability" portion of the Sentry policy extended coverage to Producers for the tort damages awarded to Noyes. They further sought punitive damages for Sentry's alleged bad faith in refusing to defend in the Noyes action.

---

[1]The policy in question listed both Producers and LAS under the heading of "Name of Insured and Address."

Sentry moved for summary judgment on the grounds that (1) Producers's policy with Sentry provided only workers' compensation or equivalent coverage with respect to the Noyes action; (2) relitigation of Noyes's status as an employee of Producers was barred under collateral estoppel principles; and (3) no basis for recovery of punitive damages existed because Sentry acted reasonably in denying coverage, Producers was not injured by Sentry's refusal to defend and Producers's request to defend was untimely.

Taking judicial notice of the entire file and proceedings in the Noyes action, the trial court granted summary judgment in favor of Sentry. The court interpreted the employers' liability provisions of Sentry's policy (set forth below) as providing coverage only in those situations where an employee of the insured was working in a jurisdiction (unlike California) where workers' compensation laws were not in effect, or where an employee has a common law right of relief against the employer in addition to his workers' compensation remedy. Finding no facts or allegations fitting either situation, the trial court held that, whether or not Noyes was deemed an employee of Producers, no employers' liability coverage was provided. The court reasoned that if Noyes were an employee of Producers, he would be limited to his workers' compensation remedy, whereas if he were not an employee, the Sentry policy provided no coverage whatsoever.

Finding that no coverage could possibly exist under the employers' liability provisions, the court also ruled that Sentry had no duty to defend Producers because there were no facts within Sentry's knowledge giving rise to potential coverage under the policy. Producers and Federal appeal from the judgment, but have not briefed the duty to defend issue. Consequently, we do not consider it on appeal. (Cal. Rules of Court, rule 29(b)(1).)

We conclude the trial court was correct in its interpretation of the employers' liability provisions of Sentry's policy, and affirm the summary judgment in favor of Sentry.

## II. THE POLICY

The Sentry policy provided two types of coverage, identified as "Coverage A" and "Coverage B." Coverage A provided workers' compensation coverage to the insured as required by law. The policy provisions at issue here are those in Coverage B (the employers' liability provisions), whereunder Sentry agreed:

"*Coverage B-Employers' Liability.*

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom

"(a) sustained in the United States of America, . . . *by any employee of the insured* arising out of and in the course of his employment by the insured either in operations in a state designated in Item 3 of the declarations [i.e., California] or in operations necessary or incidental thereto, . . .

". . . . . . . . . . . . . . . . . . . . . . . .

"II *Defense, Settlement, Supplementary Payments*

"As respects the insurance afforded by the other terms of this policy the company shall:

"(a) defend any proceeding against the insured seeking such benefits and any suit against the insured alleging such injury and seeking damages on account thereof, even if such proceeding or suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; . . .

"EXCLUSIONS

"This policy does not apply:

". . . . . . . . . . . . . . . . . . . . . . . .

"(f) under coverage B, to any obligation for which the insured or any carrier as his insurer may be held liable *under the workmen's compensation* or occupational disease *law of* [California] . . ., any other workmen's compensation or occupational disease law, any unemployment compensation or disability benefits law, or under any similar law." (Italics added.)

### III. DISCUSSION

#### A. *Collateral Estoppel Issue*

Appellants Producers and Federal first contend that the declarations and other materials provided to the trial court raised a triable question of fact whether Noyes was an employee of Producers, thus requiring denial of the summary judgment motion. (Code Civ. Proc., § 437c, subd. (c).) They further argue that the special verdict in the separate Noyes action, finding Noyes was not an employee of Producers, does not preclude relitigation, under the doctrine of collateral estoppel, of whether Noyes was an employee of Producers for insurance coverage purposes.

■ The doctrine of collateral estoppel precludes relitigation of an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit. (*People* v. *Sims* (1982) 32 Cal.3d 468, 484 [186 Cal.Rptr. 77, 651 P.2d 321].) ■ Appellants contend relitigation of Noyes' employment status should not be precluded because the first two requirements of the test are unmet.

Appellants first assert that whether Noyes was an employee of Producers for purposes of coverage under the Sentry policy is a different issue than whether such an employment relationship existed to preclude a tort action against Producers. Appellants rely primarily on *Exchange Casualty & Surety Co.* v. *Scott* (1961) 56 Cal.2d 613 [15 Cal.Rptr. 897, 364 P.2d 833].

In *Exchange Casualty,* the jury in a prior action found the driver of an automobile was not a "permissive user," thereby exonerating the owner from imputed liability under Vehicle Code section 402 (now § 17150). Subsequently, the injured party brought an action against the insurer, contending that the question of whether the driver was a permissive user under the insurance policy was different from the question of such use under the Vehicle Code. We agreed, holding that the scope of the term "permissive user" in an insurance policy may be broader than the narrow construction given that term under the Vehicle Code, imputing liability on an otherwise nonnegligent owner. (*Id.* at pp. 619-620.)

*Exchange Casualty,* however, is distinguishable. In the present case, the term "employee" is not subject to two different rules of construction, each serving a different purpose. Producers unsuccessfully defended the underlying tort action by contending that Noyes was its special employee limited to his exclusive workers' compensation remedy. The Sentry policy provided Producers with insurance for suits brought *by its employees* seeking either workers' compensation benefits or other damages in lieu of such benefits. Unlike *Exchange Casualty,* where the policy was held to be ambiguous and hence construed against the insurer, the meaning of "employee" here is clear.

This position is supported by the case of *Vezina* v. *Continental Casualty Co.* (1977) 66 Cal.App.3d 665 [136 Cal.Rptr. 198]. In *Vezina,* the plaintiff brought an action against the defendant insurance company to recover for personal injuries sustained when the plaintiff's car was struck by a car driven by an employee of defendant's insured. In a prior personal injury action against the employee and the insured company, it was determined

that the employee had not been acting within the scope of his employment at the time of the accident. Noting that the doctrine of respondeat superior was given no strict or narrow construction in the prior action, *Vezina* held that the plaintiff was barred by collateral estoppel from bringing the subsequent action based on an insurance policy that covered employees only when they were acting in their capacity as employees, the issue in both cases being the same. (*Id.* at p. 672.)

As in *Vezina,* in the present case there is no significant difference in meaning between the term "employee" as used in the third party tort liability context and Sentry's insurance policy. The employment status issue is identical in the two situations.

Appellants further assert that the second collateral estoppel requirement—a final judgment on the merits—was unmet because the Noyes judgment, although affirmed on appeal, was settled before expiration of the time to petition for review to this court. While this specific question apparently has not been directly confronted by a California appellate court, we agree with the analysis set forth in *Sandoval* v. *Superior Court* (1983) 140 Cal.App.3d 932 [190 Cal.Rptr. 29] (relying on Rest.2d Judgments, § 13). The court explained that settlement of a prior adjudication during the pendency of an appeal may render the judgment sufficiently final to support the doctrine of collateral estoppel, provided other factors of certainty and finality are satisfied. (*Id.,* at pp. 936-940.) This settlement occurring after affirmance on appeal provides even greater indicia that the judgment was "'the "last word" *of the rendering court*—a "final" judgment.'" (*Id.* at p. 936, italics in original.)

Because all the elements of collateral estoppel were met, we conclude that appellants are precluded from relitigating the issue of whether Noyes was an employee of Producers.

## B. *Sentry's Employers' Liability Coverage*

Appellants also contend that, even assuming Noyes was an employee of LAS and not Producers, the Sentry policy should provide coverage to Producers because the insuring language of Coverage B is ambiguous, and could be construed as insuring *Producers* for liability it incurs to an *LAS* employee. (Both entities are "insureds" under the policy; see fn. 1, *ante.*) Resolving all ambiguities against the insurer (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168]), appellants argue that the policy language should be construed broadly to provide such coverage. (See *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 808 [180 Cal.Rptr. 628, 640 P.2d 764].) Hence, according to appellants,

when a negligence claim is made against an "insured" (Producers), by an employee of an "insured" (LAS), the employers' liability provisions should be applicable.

█ It is a basic principle of insurance contract interpretation that doubts, uncertainties and ambiguities arising out of policy language ordinarily should be resolved in favor of the insured in order to protect his *reasonable* expectation of coverage. (*Insurance Co. of North America* v. *Sam Harris Constr. Co.* (1978) 22 Cal.3d 409, 412-413 [149 Cal.Rptr. 292, 583 P.2d 1335]; *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at pp. 269, 270, fn. 7.) It is also well established, however, that this rule of construction is applicable only when the policy language is found to be unclear. (*Gray, supra,* at p. 271; *Wolf Machinery Co.* v. *Insurance Co. of North America* (1982) 133 Cal.App.3d 324, 328 [183 Cal.Rptr. 695]; *Safeco Title Ins. Co.* v. *Moskopoulos* (1981) 116 Cal.App.3d 658, 665 [172 Cal.Rptr. 248, 18 A.L.R.4th 1301].) "'A policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable.' [Citation.]" (*Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 271 [203 Cal.Rptr. 672].) Whether language in a contract is ambiguous is a question of law. (*Id.* at p. 270.) We are also guided by the principle that words in an insurance policy must be read in their ordinary sense, and any ambiguity cannot be based on a strained interpretation of the policy language. (*McKee* v. *State Farm Fire & Cas. Co.* (1983) 145 Cal.App.3d 772, 776 [193 Cal.Rptr. 745].)

### 1. *The Scope of Sentry's Employers' Liability Coverage*

█ Our first inquiry, therefore, is whether the Sentry policy is reasonably susceptible of a construction other than that found by the trial court. Interpreting the policy as appellants suggest, the employers' liability provision, as applied in the context of the facts of this case, would read in part as follows: "[Sentry agrees] to pay on behalf of [Producers] all sums which [Producers] shall become legally obligated to pay as damages because of bodily injury by accident . . . sustained . . . by any employee of [LAS] arising out of and in the course of his employment by [LAS]." In other words, appellants would freely interchange Producers and LAS in the policy language because technically both are named insureds under the policy.

In support of their argument that the policy is reasonably susceptible of such an interpretation, appellants presented evidence to the trial judge detailing the close relationship (including common officers and directors) between Producers and LAS, and the fact that officers of both corporations

treated the two as one entity.[2] Appellants also presented the testimony of Richard Shehadey, an officer of both corporations who handled the acquisition of the Sentry and Federal policies. He testified, among other things, that it was his understanding that the Sentry policy covered both companies for injuries to employees of either company, regardless of who was the employer, and that this purpose was achieved by naming both companies as insureds; the Federal policy covered only the companies' vehicles and third party liability. It was also his understanding that coverage under the two policies would not overlap.

■ While extrinsic evidence may be considered by a court as an aid in the interpretation of a written contract when it is "relevant to prove a meaning to which the language of the instrument is reasonably susceptible" (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]), "'"[i]f the evidence offered would not persuade a reasonable man that the instrument meant anything other than the ordinary meaning of its words, it is useless."'" (*Blumenfeld* v. *R. H. Macy & Co.* (1979) 92 Cal.App.3d 38, 45 [154 Cal.Rptr. 652].) The foregoing testimony nonetheless does not establish that the language of the policy is *reasonably* susceptible of a meaning other than that Sentry's employers' liability coverage protected Producers only against its liability *as an employer.*

■ In assessing Producers's assumptions regarding coverage, we observe that a finding of ambiguity in policy language cannot be based on an unreasonable misunderstanding on the part of the insured. (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 869 [27 Cal.Rptr. 172, 377 P.2d 284]; *Interinsurance Exchange* v. *Velji* (1975) 44 Cal.App.3d 310, 319 [118 Cal.Rptr. 596].) A reasonable person in the position of an officer of Producers would not disregard the fact that legally Producers and LAS were each separate entities, and accordingly that person would not assume coverage existed under Producers's employers' liability policy where the potential plaintiff is not a Producers's employee.

■ This policy is one covering an *employer's* liability, that is, liability incurred by virtue of one's status as an employer. Yet, Producers's liability to Noyes was not based on any employment relationship between them, but arose instead from Producers's negligent maintenance of its delivery truck. Despite the fact that Producers did not incur legal liability to Noyes *as his employer,* appellants assert that the employers' liability provisions should

---

[2]No one has ever argued that the two corporations should be treated as one under the law. But were we to do so, then seemingly Sentry's liability still would be limited to workers' compensation payments because Noyes necessarily would be deemed the employee of that single entity. (See also discussion, *post,* at pp. 915-917.)

be construed to provide coverage to Producers for Noyes's injuries. We decline to hold that the language of the policy is reasonably susceptible of such an interpretation.

Our construction of the policy also accords with established public policy as to the nature and purpose of this type of insurance. While employers' liability insurance is not required by statute, it is statutorily authorized[3] and regulated,[4] and the statutory provisions governing such insurance are helpful to our inquiry herein.

Insurance Code section 11750, authorizing the creation of a rating organization for workers' compensation, states in pertinent part: "The purpose of this article is to promote the public welfare by regulating concert of action between insurers in collecting and tabulating rating information and other data that may be helpful in the making of adequate minimum rates for workers' compensation insurance *and for employers liability insurance incidental thereto and written in connection therewith . . . .*" (Italics added.) Employers' liability insurance is further defined as "insurance of any liability of employers for injuries to, or death of, employees arising out of, and in the course of, employment when this insurance is incidental to, and written in connection with, the workers' compensation issued to the *same employer* and covering the *same employer interests.*" (Ins. Code, § 11750.1, subd. (f), italics added.) Appellants' interpretation of the Sentry policy, providing coverage to Producers for an injury to an LAS employee, arising out of his employment with LAS, runs contrary to the statutorily expressed notion that employers' liability insurance is aimed at providing additional protection to the *same employer,* who has workers' compensation insurance covering the employee's injury.

Appellant's argument also contravenes the statutory prohibition that liability insurance does not include workers' compensation insurance (Ins. Code, § 108), and the Insurance Commissioner's rule that other classes of insurance may not be included in the same policy providing workers' compensation and employers liability insurance. (Cal. Admin. Code, tit. 10, § 2350 [general rule 8, published separately in the Manual of Rules, Classification and Basic Rates for Workers' Compensation Insurance].)[5] By in-

---

[3]Insurance Code section 11780.

[4]See also Insurance Code section 11732.1 (regulating classification of risks, and premium rates for employers' liability insurance).

[5]This legislative intent was expressed in the amendments to Insurance Code section 11730: "To effectuate the social policy of this State to create and enforce a complete system of workmen's compensation as declared in Section 21 of Article XX of the Constitution of California, and to maintain the integrity of such system, the Legislature always has subjected workmen's compensation insurance to detailed regulation different from that provided for

terpreting the employers' liability provisions as providing coverage in the absence of an employment relationship, appellants essentially construe the provision as a general liability policy for those plaintiffs who are coincidentally employees of a company named as an insured on the same workers' compensation and employers' liability policy as the defendant company, a situation likely to occur in the group insurance context. (See Ins. Code, § 11656.6.)[6]

Appellants' erroneous interpretation would similarly affect the purchase of group insurance. Insurance Code section 11656.6 allows employers to combine to purchase workers' compensation insurance at lower premiums, provided "[e]ach member of an organization insured under a group policy shall be treated as a single and separate entity as respects rates, classifications and rating plans." (Ins. Code, § 11656.7.) Appellants' interpretation would frustrate this statutory goal as insurers would be justifiably concerned that by providing group coverage, they may be held liable under an employer/defendant's employers' liability coverage simply due to the fortuitous circumstance that the plaintiff/employee had a job with an unrelated member of the same compensation carrier's group policy. Carriers would likely either refuse to provide group coverage, or would do so at greatly increased rates, in either case, to the detriment of the insured employers and their employees.

Thus, we conclude that the Sentry policy is not reasonably susceptible of an interpretation providing Producers coverage for tort liability arising from injuries to a nonemployee and his spouse.

## 2. *The Workers' Compensation Exclusion*

Finally, assuming arguendo, that the first paragraph of Sentry's employers' liability coverage clause applied in this case, Producers none-

---

any other class of insurance. In so doing it has protected the solvency of insurers, benefited injured workers and their dependents, and enabled employers to obtain workmen's compensation protection at the lowest cost consistent with solvency of insurers." The section goes on to state, "the legislative intent to prohibit inclusion in the classification of risks and premium rates or in merit rating of: . . . (3) any combination of California workmen's compensation insurance premiums or experience of a particular insured with his premiums or experience in any other class of insurance or in any other jurisdiction." (Stats. 1957, ch. 2317, § 1, pp. 4032-4033.)

Section 11730 itself states workers' compensation insurance as used in the article also means employer's liability insurance written in connection with workers' compensation.

[6]We note in passing that this policy was approved by the Insurance Commissioner, before issuance, as required by Insurance Code section 11658. While this approval does not create a conclusive presumption that the policy is unambiguous (*Cal. Comp. & Fire Co.* v. *Ind. Acc. Com.* (1965) 62 Cal.2d 532, 536 [42 Cal.Rptr. 845, 399 P.2d 381]), we find persuasive the argument that the commissioner would not likely approve a policy violating one of his own rules.

theless would still be denied coverage due to exclusion (f) of that same policy. The exclusion applies because the Noyes's injuries created an obligation which Sentry *already satisfied* under the workers' compensation law, due to the benefits previously paid by Sentry to Noyes as an LAS employee. ■ ■ ■ ■ Appellants argue the phrase "the insured," in exclusion (f) is ambiguous and should be construed narrowly (*Reserve Insurance Co.* v. *Pisciotta, supra,* 30 Cal.3d at p. 808) to refer only to the insured against whom an obligation under the workers' compensation law could be imposed.[7] Because no workers' compensation obligation could be imposed on Producers, a nonemployer of Noyes, the exclusion assertedly is inapplicable. We disagree.

■ As the trial court found herein, employers' liability insurance is traditionally written in conjunction with workers' compensation policies, and is intended to serve as a "gap-filler," providing protection to the employer in those situations where the employee has a right to bring a tort action despite the provisions of the workers' compensation statute or the employee is not subject to the workers' compensation law.[8] (See generally, 7B Appleman, Insurance Law and Practice (Berdal ed. 1979) § 4571, pp. 1-4.) Generally, these two kinds of coverage are mutually exclusive. (*Ibid.*) Most employers' liability policies limit coverage to liability for which the insured is held liable *as an employer.* (Hanna, *supra,* at pp. 21-39.) ■ The Sentry policy is no exception. Exclusion (f) implements this scheme by excluding from coverage any obligation for which the insured or his insurer may be held liable under workers' compensation.[9]

In essence, appellants would have us construe the exclusionary clause in the abstract, without regard to its intended function in the policy. The workers' compensation and employers' liability provisions in Sentry's policy were meant to be read together. "An insurance policy, like any other contract, must be construed in its entirety, with each clause lending meaning

---

[7]Appellants cite to *State Farm Mut. Auto Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193, 202-203 [110 Cal.Rptr. 1, 514 P.2d 953], holding the phrase "the insured," in an automobile insurance policy exclusionary clause ambiguous and construing it against the insurer. However, language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract. (*Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192, 198-199, fn. 5 [84 Cal.Rptr. 705, 465 P.2d 841].)

[8]See *Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 272-276 [179 Cal.Rptr. 30, 637 P.2d 266] (discussing the "dual capacity" doctrine); but see Labor Code section 3602. Such liability may occur, for example, where an employee is excluded from the protection of the workers' compensation law (see Lab. Code, § 3358 [nonindustrial watchmen]; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (rev. ed. 1985) § 21.03, p. 21-42).

[9]This is a typical exclusion in a standard workers' compensation and employers' liability policy. (Hanna, *supra,* at pp. 21-53 - 21-54, fn. 68.)

to the other." (*Holz Rubber Co., Inc.* v. *American Star Ins. Co.* (1975) 14 Cal.3d 45, 56 [120 Cal.Rptr. 415, 533 P.2d 1055, 79 A.L.R.3d 518]; see also Civ. Code, § 1641.) Rather than filling any gaps in coverage, appellants' proffered construction of the policy would require Sentry to pay for Noyes's injuries twice, once by providing on LAS's behalf workers' compensation benefits owing to Noyes as an LAS employee, and the second time by providing on Producers' behalf indemnity for Noyes's tort suit as a nonemployee. This dual recovery under a single policy is contrary to both the plain meaning of the policy itself, and the concept of employers' liability insurance as it is commonly understood.

CONCLUSION

The key feature to an employer's liability policy, which appellants have failed to appreciate, is the *employment relationship* required between the insured and the injured employee before the policy affords coverage. An interpretation providing coverage to nonemployees of Producers is unreasonable. The policy is *not* a general liability policy providing coverage for injuries to members of the general public; instead it provides coverage to employers for those injuries to their employees not covered by workers' compensation. Both because the policy is unambiguous and clear, and because appellants' interpretation would violate the statutory policy of this state, we hold the employers' liability provisions (Coverage B) of the Sentry policy did not provide coverage to Producers for the damages it incurred due to the injuries to Noyes.

The interpretation of this standard workers' compensation and employers' liability policy presented solely a question of law, which the trial court correctly decided in favor of Sentry.

The judgment is affirmed.

Mosk, J., Broussard, J., Reynoso, J., and Moscone (Philip J.), J.,* concurred.

**GRODIN, J.**—I concur in the court's holdings and reasoning as to the collateral estoppel issue (part III-A), and as to the scope of Sentry's employer's liability coverage (part III-B-1), and on those grounds I concur in the judgment. As the court observes (*ante,* p. 916), employers' liability insurance appears in workers' compensation policies as a "gap-filler," providing protection where the employee has a right to sue despite the exclu-

---

*Judge, San Francisco Municipal Court, assigned by the Chairperson of the Judicial Council.

sivity provisions of the workers' compensation statute, and the workers' compensation exclusion serves to make that additionally clear.

I do not agree, however, with the unnecessary dictum that the workers' compensation exclusion would operate to deny coverage even "assuming arguendo, that the first paragraph of Sentry's employers' liability coverage clause applied in this case." (*Ante*, p. 915.) If we were seriously to indulge that assumption (which we all agree is incorrect), I should think Producers would be entitled to indemnification for tort damages notwithstanding Sentry's payment of workers' compensation benefits for LAS Corporation.

Bird, C. J., concurred.