**AVEMCO INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**William DAVENPORT, Defendant–Appellant,**

**and**

**Department of Water and Power, City of Los Angeles, Defendant,**

**Southern California Edison Company; Allstate Insurance Company, Defendants–Intervenors.**

No. 96–56818.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1998.

Decided April 7, 1998.

Todd E. Macaluso, Schlothauer, Collins & Macaluso, Los Angeles, CA, for defendant-appellant.

Garry L. Montanari, Michaelis, Montanari & Johnson, Westlake Village, CA, for plaintiff-appellee.

Before: FLETCHER, MAGILL,* and T.G. NELSON, Circuit Judges.

MAGILL, Senior Circuit Judge:

Avemco Insurance Company (Avemco) issued an insurance policy covering William Davenport's home-built experimental aircraft. After Davenport's aircraft crashed on May 7, 1995, Avemco sought a declaration from the district court that, because Davenport had not complied with the terms of the policy, Avemco had no duty to defend or indemnify Davenport for any claims arising from the accident. The district court granted summary judgment in Avemco's favor, and Davenport now appeals. We affirm.

**I.**

Davenport, an experienced pilot and builder of experimental aircraft, holds a private pilot certificate and a repairman's certificate issued by the Federal Aviation Administration (FAA). Prior to the events giving rise to this case, Davenport built a "VariEze" aircraft from plans he purchased from Rutan Aircraft. Davenport eventually sold the VariEze and began building a second aircraft in 1992. The second plane was built largely from Rutan Aircraft's "Long EZ" plans. Because Davenport made several modifications to these plans, he refers to his hybrid design as the "Davenport Long EZ."

In September 1994, Davenport purchased an amateur-built aircraft insurance policy from Avemco, which provided coverage from September 13, 1994, to September 13, 1995. The policy contained an exclusion from liability that stated:

This Policy does not cover bodily injury, property damage or loss ... [w]hen your

insured aircraft is in flight unless it[ ] is certified for flight by the FAA, initially, and after a modification which requires recertification.

Avemco Policy at 3 (emphasis omitted) (Policy Exclusion).

The FAA initially certified Davenport's aircraft as airworthy in April 1993, but conditioned Davenport's airworthiness certificate on thirteen "Operating Limitations." One limitation required that "[t]he cognizant FAA Flight Office must be notified and their response received in writing prior to flying this aircraft after incorporating a *major change* as defined by [14 C.F.R. § 21.93]." Special Airworthiness Certificate, Operating Limitation No. 10 (emphasis added). A major change is any change having any "appreciable effect on the weight, balance, structural strength, reliability, operational characteristics, or other characteristics affecting the airworthiness of the product." 14 C.F.R. § 21.93(a) (1993).

According to Davenport, his aircraft was equipped with a gravity feed fuel system at the time of the FAA's initial certification. This design relies on gravity to transfer fuel from the fuel tanks through a fuel line and into the engine. After receiving his initial certification, Davenport made a series of changes to his fuel system without notifying the FAA. Davenport first converted the gravity feed system into a pressurized fuel system by installing a mechanical fuel pump and an electric boost pump. After flying the aircraft for fifteen hours, Davenport removed the fuel pumps and reconfigured the system to its original gravity feed design, again without notifying the FAA. Hoping to improve the performance of his aircraft, Davenport soon reinstalled the mechanized fuel pumps but again failed to inform the FAA of this change. Davenport eventually grew dissatisfied with the pressurized fuel system, and he removed the pumps—once again without notifying the FAA. In sum, following the FAA's initial certification, Davenport made four modifications to the design of his fuel system

---

* Honorable Frank J. Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by

designation.

without notifying the FAA of these changes or seeking FAA recertification of his aircraft.

On May 7, 1995, with the most recent version of the gravity feed fuel system in place, Davenport crashed his aircraft near an airport in Santa Monica, California. The accident caused property damage on the ground, which in turn spawned numerous claims against Davenport in California state courts.

Avemco filed this suit in federal district court, asserting diversity jurisdiction and seeking a declaration that it had no duty to defend or indemnify Davenport for claims arising from the accident. On October 30, 1996, the district court granted summary judgment in Avemco's favor. The district court held that the Policy Exclusion applied because Davenport had not recertified his aircraft after he modified its fuel system without notifying the FAA. Davenport now appeals.

## II.

We review the district court's grant of summary judgment de novo. *Wendt v. Host Int'l Inc.*, 125 F.3d 806, 809 (9th Cir.1997). Summary judgment is appropriate if there is no genuine issue of material fact and if the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).[1]

■ Under California law, the language of a contract governs its interpretation "if the language is clear and explicit, and does not involve an absurdity." Cal. Civ.Code § 1638. "[I]f the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." *AIU Ins. Co. v. Superior Court (FMC Corp.)*, 51 Cal.3d 807, 274 Cal.Rptr. 820, 831, 799 P.2d 1253, 1264 (1990). Exclusionary language that limits its coverage under an insurance policy must be conspicuous and phrased in clear language. *Hertz Corp. v. Home Ins. Co.*, 14

Cal.App.4th 1071, 18 Cal.Rptr.2d 267, 273 (1993).

■ We hold that the language of the Avemco policy clearly excluded coverage in this case. The Policy Exclusion stated that Davenport's aircraft would be covered only if it was certified for flight "after a modification which requires recertification." Avemco Policy at 3. This language explicitly premised coverage on Davenport's compliance with FAA restrictions. These restrictions included an operating limitation that required Davenport to notify the FAA upon making a change that could affect the "reliability, operational characteristics, or other characteristics affecting the airworthiness of the [aircraft]." 14 C.F.R. § 21.93(a). Davenport's failure to notify the FAA prior to his initial modification of the fuel system violated the operating limitation on his airworthiness certificate and prohibited Davenport from operating the aircraft without recertification. *See* 14 C.F.R. § 91.9(a) (1993) ("[N]o person may operate a civil aircraft without complying with the operational limitations ... prescribed by the certificating authority of the country of registry."). Davenport's failure to notify the FAA of his repeated modifications to his aircraft's fuel system clearly triggered the Policy Exclusion and released Avemco from any obligation to indemnify Davenport.

■ Davenport argues that the series of modifications he made to his aircraft's fuel system did not constitute a "major change" because the fuel system at the time of the crash was in the same configuration as at the time of the initial certification. We reject this argument. Common sense dictates that altering the method of delivering fuel to the engine of an aircraft has an obvious and substantial effect on the "reliability, operational characteristics, or other characteristics affecting the airworthiness of the [aircraft]." 14 C.F.R. § 21.93(a).[2] The fact that Daven-

---

1. Because diversity jurisdiction exists in this case, the district court could hear Avemco's declaratory judgment action in its discretion. *See* 28 U.S.C. § 2201(a). Because there was no objection to the district court's exercise of its discretion in hearing this case, and because we do not find extraordinary circumstances that warrant an independent inquiry by this Court, we

will not review the district court's exercise of its discretionary jurisdiction. *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1224 & n. 4 (9th Cir.1998) (en banc).

2. Indeed, in an analogous regulation applying to the maintenance and repair of non-experimental aircraft, the FAA has defined major alterations as

port made repeated changes to the fuel system did not remedy his failure to notify the FAA prior to making each change. Each change Davenport made to the fuel system was major, and each change therefore required FAA notification under the operating limitation.

Davenport also argues that the Policy Exclusion was vague and ambiguous, and that it should therefore be construed to allow coverage. "[W]ords in an insurance policy must be read in their ordinary sense, and any ambiguity cannot be based on a strained interpretation of the policy language." *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 226 Cal.Rptr. 558, 718 P.2d 920, 925 (1986). Furthermore, the "language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Bank of the West v. Superior Court (Industrial Indem. Co.)*, 2 Cal.4th 1254, 10 Cal. Rptr.2d 538, 545, 833 P.2d 545, 552 (Cal.1992)(quotations and emphases omitted).

We find no ambiguity in Davenport's policy. The policy clearly linked Avemco's coverage to the continued validity of the FAA's certification of Davenport's aircraft. Because California courts do not find ambiguity in exclusions that similarly incorporate FAA requirements by reference, *see, e.g., Threlkeld v. Ranger Ins. Co.*, 156 Cal.App.3d 1, 202 Cal.Rptr. 529, 532 (1984), we will not do so here.

Davenport finally argues that, even if there is no duty to indemnify, Avemco owed Davenport a duty to defend against pending state suits. Although the duty to defend is broader than the duty to indemnify, *see Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 17 Cal.Rptr.2d 210, 213, 846 P.2d 792, 795 (1993), no duty to defend arises if the undisputed facts establish that the insured is not entitled to coverage. *Montrose Chem. Corp. v. Superior Court (Canadian Universal Ins. Co.)*, 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 473, 861 P.2d 1153, 1159 (1993) (agreeing

with lower court that, "where extrinsic evidence establishes that the ultimate question of coverage can be determined as a matter of law on undisputed facts, [there is] no reason to prevent an insurer from seeking summary adjudication that no potential for liability exists and thus that it has no duty to defend." (quotation omitted)). Because the facts viewed in the light most favorable to Davenport could not have established coverage under the policy, Avemco was entitled to summary judgment on Davenport's allegation of a duty to defend.

Accordingly, we affirm the judgment of the district court.

AFFIRMED.

including "[c]hanges to the basic design of the fuel ... system[ ]." 14 C.F.R. Part 43 app. A(a)(1)(xii).