Filed 8/7/13  Michael C. v. Super. Ct. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MICHAEL C., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF IMPERIAL COUNTY, <br><br> Respondent; | D063863 <br><br> (Imperial County <br> Super. Ct. Nos. JJP02368 & JJP02369) |
| IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES et al., <br><br> Real Parties in Interest. | |


PROCEEDINGS for extraordinary relief after reference to a Welfare and Institutions Code section 366.26[1] hearing.  Jeffrey B. Jones, Judge.  Petition denied; request for stay denied.


Childers & Associates and Ryan D. Childers for Petitioner.

---

1    Statutory references are to the Welfare and Institutions Code.

Michael L. Rood, County Counsel, Geoffrey P. Holbrook and Haislip W. Hayes II, Deputy County Counsel, for Real Party in Interest Imperial County Department of Social Services.

Ann Cameron Hadridge for Real Parties in Interest David H. and E.R., Minors.

Michael C. seeks writ review of orders terminating his reunification services regarding his sons, David H. and E.R., and referring the matter to a section 366.26 hearing. Michael contends the doctrine of collateral estoppel precludes the Imperial County Department of Social Services (the Department) from relying as the factual basis for subsequent petitions on allegations that he subjected E.R. to sexual abuse. We deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2010, seven-year-old David and six-year-old E.R. were taken into protective custody. The Department petitioned on behalf of the two children under section 300, subdivision (b), alleging they were at substantial risk because of Michael's use of methamphetamine. The petitions also alleged law enforcement officers had seized journals written by Michael in which he described how he had forced and was planning to force E.R. to engage in sex acts with a male prostitute named Hector and with other people. The petitions further alleged pornographic movies and magazines were in the home within the children's reach; Michael had been arrested for indecent exposure; blood stains were discovered on the bedding of E.R.'s bed; and E.R. said that after school each day he and David each separately showered with Michael.

2

The petition regarding E.R. also alleged under section 300, subdivision (b), that he was at substantial risk of harm because Michael had sexually molested him. It further alleged under section 300, subdivision (d), that Michael had sexually abused him; and under section 300, subdivision (i), that Michael had subjected him to acts of cruelty. The petition regarding David alleged under section 300, subdivision (j), that he was at substantial risk because of Michael's abuse of E.R.[2] The children were detained out of the home.

The social worker reported Michael said the writings in his journals were only fantasies and he had not had either of the children engage in sexual encounters with himself or anyone else. He said writing about his fantasies was a way of satisfying his urges and thoughts. David and E.R. were interviewed at the Chadwick Center, but neither boy disclosed any information about the allegations.

Psychologist Beatriz Heller diagnosed Michael with pedophilia and said he was sexually attracted to males. She noted, "While it may be true he has not actually engaged in sexual activity with his children or other children, including exhibitionism and voyeurism, without intensive intervention, he is considered to remain at high risk for recidivism in light of his disavowal of having problems that need treatment, low level of

---

[2]    The petitions specifically alleged Michael admitted using methamphetamine and prostitutes frequented the home while the children were there. The journals Michael admitted writing included such statements as E.R. needs to "learn to suck cock," and needs to be taken "to a truck stop so [E.R.] can suck their cocks and they can fuck him in the asshole." Michael wrote he would "sell E.R.'s asshole to these truckers"; Hector needs to "go to E.R.'s room . . . [and] suck his dick"; and Hector is going to "have sex with David and [a neighbor's child]."

3

accountability for his actions and history of behavioral control problems." Psychiatrist Alvaro Camacho provided a psychiatric evaluation. His diagnoses included "Amphetamine Dependence in Partial Remission[,] Consider Mood disorder . . . [,] Consider Impulse Control Disorder [and] Consider Pedophilia." He recommended the children not live with Michael at that time. On May 13, 2011, a urine test of Michael was negative for all substances and a hair follicle test was positive for methamphetamine.

At the jurisdictional hearing on July 19, 2011, the court found both children were at substantial risk of serious harm under section 300, subdivisions (b) and (d), and David was at risk under section 300, subdivision (j). It found Michael had admitted using drugs in the home, had written about sexual abuse of E.R. and had been arrested for masturbating in public. The court also found pornographic movies and magazines had been found in the home. It did not find true the allegations that Michael had sexually molested E.R. or that he had subjected him to cruelty.

Subsequently, in August 2011 the court-appointed special advocate (CASA) for the children reported E.R. told her Hector would come to his room and put his "pee in his mouth" and that "my daddy was next to Hector when he did that." E.R. also said Hector touched his private parts. David said E.R. had told him about this activity.

Michael was evaluated by psychologist Clark Clipson in November 2011. Dr. Clipson reported Michael did not demonstrate evidence of deviant sexual interest, including pedophilia. Dr. Clipson based his conclusion on the fact Michael did not report sexual interest in pubescent children or demonstrate such interest on a measure of sexual

4

interest, and he had not written about sexual fantasies involving a child for a longer time period than six months.

In December 2011, the Department petitioned under section 388 requesting the court deny Michael visitation. The children's therapist said the children reported seeing Michael perform fellatio on Hector, that Hector had put his penis in E.R.'s mouth and Michael had had them watch pornographic movies.

At the disposition hearing in December 2011, the court found there had not been clear and convincing evidence presented to show Michael has a mental disability making him incapable of benefitting from reunification services under section 361.5, subdivision (b)(2). It noted, although the children's therapist recommended Michael not visit the children, that position was based on an assumption the children had been sexually abused, but the court had found only that Michael had failed to supervise them properly and they were at risk of sexual abuse under section 300, subdivisions (b) and (d), and David was at risk under section 300, subdivision (j). The court removed the children from Michael's custody and ordered reunification services. It ordered reasonable visitation supervised or arranged by the Department.

In July 2012, the CASA reported the children had disclosed that Hector had sexually abused E.R. while Michael watched. She reported they also said Michael had had them observe while he and Hector performed sexual acts, and there were pictures on the home computer of E.R. with penises in his mouth. The CASA reported E.R. disclosed he did not like it when "Hector would put his pee pee[] in my butt." David said his daddy would say "Hector's pee was hard and strong and E.R. needed to learn." The

5

foster parents reported that after the boys began having visits with Michael, they became defiant, did not listen and E.R. began stealing. The CASA and the boys' therapist also reported a deterioration in the boys' behavior and school work when visits were expanded. David said he wanted to live with Michael. E.R. said he wanted to continue to live in the foster home, but did not want to make David angry.

Michael participated in the services of his case plan, and his therapist recommended he be reunited with the children. The therapist had been treating Michael for drug and alcohol problems, but Michael had not admitted pedophilic behavior, so he had not treated him for that disorder. At the review hearing on July 26, 2012, the court found Michael had been making substantial progress and continued the children as dependent children, continued services for an additional six months and expanded visitation.

Based on the court's order for expanded visits and a recommendation by the family therapist, the Department arranged two overnight visits. Before the visits, the social worker informed Michael he must not sleep in the same bed with the children. However, after the second overnight visit, the children disclosed they had slept with Michael, and he had scrubbed their bodies in a shower while they were wearing swim trunks. The court ordered suspension of overnight visits.

In November 2012, the Department filed subsequent petitions under section 342, alleging as new facts or circumstances that E.R. actually had been molested by Hector in Michael's presence and E.R. had drawn pictures for his therapist depicting this; Michael had slept in the same bed with the boys during overnight visits although instructed not to

6

do so and, during the visits, he had showered them and scrubbed their bodies except their private parts while they wore swim trunks. The petitions also alleged E.R. had disclosed he does not feel safe with Michael because Michael would hit him and Michael was "ok when Hector put his peanut (penis) in my mouth." The court ordered Michael to undergo a forensic psychiatric assessment.

In February 2013, at the Department's request, the court suspended visits since the visitation center refused to allow future visits because of safety concerns, and reports showed visits were interfering with therapy, the children acted out after visits, and David's school work and behavior had deteriorated. Subsequently, the social worker said that after suspension of visitation, the boys' teachers and foster parents reported significant positive changes in the children.

The psychiatrist who performed a psychiatric assessment of Michael diagnosed him with bipolar affective disorder and pedophilia, nonexclusive type, and said although Michael's most glaring behavior had occurred during amphetamine intoxication, he also apparently engaged in inappropriate behavior of a sexual nature when sober.

At the jurisdictional hearing on the section 342 petitions in March 2013, after considering the documentary evidence and testimony by the social worker, the CASA, Dr. Clipson and E.R., the court denied Michael's request to strike allegations from the supplemental petitions regarding actual sexual abuse. It found the allegations of the petitions to be true. It specifically found E.R. had oral sex with Hector in Michael's presence, and Michael watched the activity for his own gratification, and, after being instructed not to do so, Michael slept in the same bed with the children and showered

7

them, and there was a sexual component to these activities. It found Michael did not protect E.R. from Hector and there is a substantial risk of future abuse. It further found Michael is a pedophile.

At the dispositional hearing on April 16, 2013, the court continued the children as dependents of the court. It found further reunification services would not be provided under section 361.5, subdivision (b)(6) (severe sexual abuse) and referred the matter for a section 366.26 hearing.

Michael petitioned for review of the court's orders. (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452.) This court issued an order to show cause, the Agency responded and the parties waived oral argument.

DISCUSSION

Michael contends the doctrine of collateral estoppel precluded the Department from relying on allegations that he subjected E.R. to sexual abuse as the factual basis for the subsequent section 342 petitions. He argues the sexual abuse allegations were litigated at the July 19, 2011 jurisdictional hearing and must be stricken from the petitions.

A. *Legal Principles*

Under California law, the collateral estoppel doctrine bars relitigation of an issue decided in a previous proceeding when three elements are established: "(1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit."

8

(*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910; see *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341; *In re Joshua J.* (1995) 39 Cal.App.4th 984, 993 (*Joshua J.*).) The doctrine "is grounded on the premise that 'once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed.' " (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 864.)

Collateral estoppel " ' "is not an inflexible, universally applicable principle; policy considerations may limit its use where the . . . underpinnings of the doctrine are outweighed by other factors." ' [Citations.]" (*Vandenberg* v. *Superior Court* (1999) 21 Cal.4th 815, 829.)

Because children may at first be reluctant to talk about abuse they have endured, application of the doctrine of collateral estoppel in juvenile dependency cases involving child sexual abuse may be particularly inappropriate. As the reviewing court stated in *In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1039-1040 (*Jessica C.*),

> "Because victims of child molestation may not make complete disclosures of the extent of abuse initially, it would be too broad an application of collateral estoppel to hold that further disclosures could not be the subject of some sort of jurisdictional hearing. To do so would be to penalize children who are too shy or reticent to disclose the full extent of their sexual abuse prior to the initial dependency petition. In effect, the damage done to the victim would be compounded by a wrong perpetrated by the molester- -the invariable warning to the child not to tell."

B. *Application*

The court did not err by considering new evidence of the sexual abuse of E.R. in the subsequent petition. Before the hearings on the original petitions, the children had not disclosed being sexually abused. But subsequently, extensive new evidence was

9

brought forward after the children had been away from Michael for a time and began to talk to the CASA, their therapist and the social worker about what had been going on in the home.

Here, as in *Jessica C.,* the children disclosed much more during the dependency period than they had revealed before the jurisdiction hearing on the original petitions. Both boys told of how Hector had abused E.R. and that Michael had been present during the molestation and observed the activity. E.R. drew a picture of how he had been abused while Michael watched, and E.R. wrote about it for his therapist. David said E.R. told him of the molestation he had endured when Michael took him into a separate room with Hector. E.R. testified at the hearing on the section 342 petition that the events he had depicted in the drawing actually had occurred and that Michael was present during the molestation.

The issues decided at the jurisdictional hearing on the original petitions and the jurisdictional hearing on the subsequent petitions were not identical. The subsequent disclosures were not mere reiterations of what was alleged in the original petitions, but, along with evidence of Michael sleeping with the boys and washing them in the shower during overnight visits, constituted new evidence of abuse other than what had been previously litigated. The original petition involved the risk to the children from Michael's drug use, pornography in the home and Michael's writings of sexual fantasies in his journal. Evidence was not presented at the earlier hearing that David or E.R. had reported inappropriate touching or that Michael had acted out the fantasies in his journal.

The court did not err by determining that the principle of collateral estoppel did not preclude litigation of the issue of actual sexual abuse alleged in the subsequent petitions.

Michael's reliance on *Joshua J.* is misplaced. In that case, the father had admitted molesting his son, Justin, in 1987. Several years later, the social services agency petitioned on behalf of a younger sibling, Joshua, based on the conduct alleged in the earlier petition. The court held the father could not relitigate the issue of his abuse of Justin because the issue had been decided in the earlier hearing. (*Joshua J., supra,* 39 Cal.App.4th at p. 993.) Here, the issues of the original and subsequent petitions were not the same. The issues of actual sexual abuse and whether Michael had been present during the abuse were not litigated at the earlier hearing. The holding of *Joshua J.* does not aid Michael's position.

In addition, by the time of the hearing on the subsequent petitions, the children had been out of Michael's care for more than two years. The time for him to receive reunification services had run out, and the court could not have concluded he should receive additional services under section 366.21, subdivision (g)(1), because he was not, as required by that statutory provision, having consistent visits, and he had not made significant progress or shown he could complete the objectives of his case plan or provide for the children's safety and protection. Michael's visits had been suspended and the visitation facility refused to continue to supervise visits. The children's therapist reported Michael was coaching them about what to say. Michael's therapist was in the process of terminating therapy because Michael was no longer making progress, but blamed others

11

for his problems and refused to take responsibility.  The court could not find he should receive additional services.

The court did not err by denying Michael's request to exclude the issues of actual sexual abuse in the subsequent petitions under principles of collateral estoppel.  Michael has not shown error by the court terminating his reunification services and referring the matter to a section 366.26 hearing.

DISPOSITION

The petition is denied.  The request for stay is denied.

NARES, J.

WE CONCUR:


BENKE, Acting P. J.


McINTYRE, J.

12